LOCAL UNION NO. 487, IAFF-CIO, Local Union No. 29, Professional Police Association, Police Command Group, Local Union No. 9, Eau Claire Professional Police Association (Patrol Group), David Patrow, Brad A. Gough and David Malone, Plaintiffs-Respondents.

v.

CITY OF EAU CLAIRE, Eric Anderson, James McFarlane and John Brown, Defendants-Appellants-Petitioners.†

Supreme Court

*No. 86–1637. Argued November 29, 1988.—Decided January 12, 1989.*

(Also reported in 433 N.W.2d 578.)

† Petition to review granted.

For the defendants-appellants-petitioners there were briefs and oral argument by *Frederick W. Fischer,* city attorney, Eau Claire.

For the plaintiffs-respondents there was a brief by *Richard V. Graylow* and *Lawton & Cates, S.C.,* Madison, and oral argument by *Mr. Graylow.*

Amicus curiae brief was filed by *James H. Schneider,* Madison, for League of Wisconsin Municipalities.

STEINMETZ, J.   The issue in this case is whether, under the Wisconsin Constitution art. XI, sec. 3 or sec. 62.11(5), Stats., the city of Eau Claire possesses sufficient home rule authority to establish a public safety officer (PSO) program. We conclude that the city of Eau Claire does not have the authority to create such a program, and, therefore, we affirm the court of appeals.

In June, 1985, the unions and members thereof filed this action together with a motion for a temporary injunction to restrain the initiation of the PSO training. The circuit court for Eau Claire county, the Honorable Thomas H. Barland, denied the motion. However, subsequently, Judge Barland declared the

PSO program of the city to be invalid and issued a permanent injunction restraining its implementation.

The court of appeals in *Local Union No. 487 v. Eau Claire,* 141 Wis. 2d 437, 415 N.W.2d 543 (Ct. App. 1987) affirmed the trial court. The court of appeals decided that the establishment of a PSO program is a subject of statewide concern. It concluded that the city of Eau Claire did not have the authority to create a PSO program.

Prior to January 1, 1984, the city council and staff of the city of Eau Claire considered a concept involving designation of a public safety officer (PSO). A PSO is a police officer whose primary duty is the performance of the normal and usual police functions, but who is also trained to respond to fire emergencies when needed.[1] Under the concept, when responding to fire emergencies, the PSO would be subject to the direction of the fire department command. The program did not propose to train firefighters to perform police functions.

After a committee report, Eau Claire's city manager recommended to the city council that there be a two-year test period for the PSO program. The city manager made his recommendation based on the possibility of greater economy and efficiency in providing police and fire services. The city council adopted the recommendation of the city manager. The city claims the proposed PSO program does not purport to merge or otherwise consolidate or combine the police

---

[1]Under *"General Function"* The Public Safety Officer job description states: "The Public Safety Officer performs general police, firefighting, rescue and first responder medical duties on an assigned shift. He/she is dedicated to the preservation of life, protection of property and welfare and safety of the community."

department and the fire department. It is intended that two separate departments are retained.

The Eau Claire city manager wrote the following to the common council:

> After careful review of these recommendations and the supporting material submitted by the committee, as well as other materials provided by a variety of sources, it is my conclusion that partial consolidation of the police and fire functions has merit.

The creation of the PSO program was not in response to any emergency, but rather, the program partially consolidated the departments' responsibilities into one position on a regular basis.

The city hired six additional police officers and four additional firefighters in connection with the program, and the training of the police officers designated as PSO's was scheduled to commence in July, 1985. An additional fire station was also to be constructed.

Municipalities in Wisconsin, such as the city of Eau Claire, have broad home rule powers pursuant to art. XI, sec. 3 of the Wisconsin Constitution which reads as follows:

> (1) Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.

The home rule provision of the constitution is to be liberally construed. *State ex rel. Ekern v. Milwau-*

*kee,* 190 Wis. 633, 639, 209 N.W. 860 (1926). This home rule provision does two things. First, it makes a direct grant of legislative power to cities and villages by expressly giving cities and villages the power to determine their local affairs and government. Second, it limits the state legislature in the exercise of its general grant of power by limiting enactments in the field of local affairs of cities and villages. *State ex rel. Michalek v. LeGrand,* 77 Wis. 2d 520, 526, 253 N.W.2d 505 (1977).

In addition to the constitutional grant of power, the legislature has made a broad statutory grant of power to all cities except those of the first class under special charter. *See* sec. 62.03(1), Stats. Section 62.11(5) reads as follows:

> **(5)** Powers. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.

*Wis. Asso. of Food Dealers v. City of Madison,* 97 Wis. 2d 426, 432–33, 293 N.W.2d 540 (1980) made clear that municipal legislation may not infringe on the spirit of a state law or general policy of the state. The court stated:

If a city ordinance exercises a power which the legislature could confer on the city, then the city possesses the power under sec. 62.11(5) unless there is express language elsewhere in the statutes restricting, revoking, or withdrawing the power, or unless state legislation is logically inconsistent with the existence of the power in the city. *See: Wis. Environmental Decade, Inc. v. DNR,* 85 Wis. 2d 518, 534–35, 271 N.W.2d 69 (1978), quoting with approval, Comment, *Conflicts Between State Statute and Local Ordinance in Wisconsin,* 1975 Wis. L. Rev. 840, 848. This court has added a further limitation on a municipality's exercise of authority pursuant to the legislature's broad grant of power in sec. 62.11(5); ordinances may not '"infringe the spirit of a state law or … general policy of the state."' *Fox v. Racine,* 225 Wis. 542, 545, 275 N.W. 513 (1937); *See also: Wis. Environmental Decade, Inc. v. DNR, supra* at 534–35. Thus in determining whether a preemption challenge to an ordinance adopted pursuant to sec. 62.11(5) has a reasonable probability of success, a circuit court should assess whether express statutory language has withdrawn, revoked, or restricted the city's power; the probability that the challenged ordinance is logically inconsistent with state legislation; and the probability that the challenged ordinance infringes the spirit of a state law or general policy of the state. (Footnotes omitted.)

The court of appeals stated in *State ex rel. Wilson v. Schocker,* 142 Wis. 2d 179, 184, 418 N.W.2d 8 (Ct. App. 1987):

Neither the home rule amendment nor sec. 62.11(5), Stats., implies that a municipality may not legislate in matters primarily of statewide concern. Section 62.11(5) would be a nullity if it

were construed to confer on municipalities only that authority which related to 'local affairs' since that power is already constitutionally guaranteed by the home rule amendment. Thus, municipalities may act, even in matters of statewide concern, if there is no express language elsewhere in the statutes restricting this power and as long as the ordinance or resolution does not infringe the spirit of a state law or general policy. (Footnotes omitted.)

The city argues that it possesses authority under sec. 62.11(5), Stats., to act in matters of statewide concern, unless the legislature has expressly or by implication withdrawn the city's power to act. *See Anchor Savings & Loan Ass'n v. Madison EOC,* 120 Wis. 2d 391, 395, 355 N.W.2d 234 (1984), and *State ex rel. Wilson,* 142 Wis. 2d 179.

In *Anchor Savings & Loan,* 120 Wis. 2d at 397, this court established a four-criteria test to determine whether state legislation forbids local legislation in an area. The tests are:

(1) whether the legislature has expressly withdrawn the power of municipalities to act;

(2) whether the ordinance logically conflicts with the state legislation;

(3) whether the ordinance defeats the purpose of the state legislation; or

(4) whether the ordinance goes against the spirit of the state legislation.

Applying these considerations, it is apparent the legislature did not intend the municipalities to be empowered to combine police and fire functions into one position. Even though the legislature has not expressly withdrawn the power of cities to establish a

PSO program, the city fails to meet the test of the three remaining criteria.

The PSO program does not meet the second criterion since it would conflict with the legislature's intent to keep the two departments separate and distinct. From the statutes referred to later in this opinion, we perceive it was the legislature's intent to require separate and distinct police and fire departments because the statutes provide separate organization, rules and benefits for police officers than for firefighters.

The PSO program also defeats the state's purpose of providing a uniform regulation of police and fire departments as evidenced in sec. 62.13(12), Stats. In sec. 62.13 the legislature provides the broad organizational structure for police and fire departments as an "enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments." Section 62.13(12).[2] Section 62.13 generally treats police and fire functions and departments as separate and distinct, *i.e.,* sec. 62.13(3), (4), (5), (7m), (7n), (8), (11) and (11a). This purpose of uniform regulation is to have the same organizational structure, training, standards and benefits throughout Wisconsin. The Eau Claire PSO program is inconsistent with this objective and violates the third criterion.

---

[2]Section 62.13(12), Stats., clearly expresses the legislative intent as follows:

"Legislative intent. Section 62.13 and chapter 589, laws of 1921, chapter 423, laws of 1923, and chapter 586, laws of 1911, shall be construed as an enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments."

The PSO program is contrary to the fourth criterion in that it contravenes the spirit of state legislation to maintain separate and distinct police and fire functions. By combining these functions, the city interferes with the state's ability to uniformly provide training, standards, retirement benefits, worker's compensation provisions and organizational requirements that apply to police officers and firefighters throughout the state. This is evident from the distinct and separate provisions regarding police officers and firefighters already in the statutes.

In this case we are aided by the numerous statutory references to the police and firefighting groups. Sometimes police departments and police officers are treated in duplicate fashion with fire departments and firefighters, and at other times these groups are created with subtle but important differences. As an example, both police officers and firefighters, while retaining their own definitions of what each is, come under the classification of "protective occupation participant" for retirement purposes within the public employee trust fund (sec. 40.02(48)(a), (b)1 and 2, Stats.). But when it comes to duty disability and death benefits for protective occupation participants under sec. 40.65, firefighters and their beneficiaries have a legal advantage not applicable to police officers. Under sec. 891.45, Stats., if a firefighter has served five years or more and obtained a medical exam prior to joining the force which shows no heart or respiratory impairment, and death or disability is caused by heart or respiratory impairment or disease, impairment or disease is presumed to be caused by the firefighter's employment. Police officers do not enjoy such a presumption as to the cause of an impairment.

527

Chapter 213, Stats., allows firefighters to organize independent associations, such as organizations of independent firefighting companies and firefighting relief associations. Chapter 213 also provides for the creation of a police relief association similar to that of firefighters' relief associations, even though the chapter is entitled "Fire Fighters' Associations."

Nowhere in the statutes is there any reference to a public safety officer or a person who performs the functions of both a police officer and a firefighter on a regular basis. Certain firefighters are given limited police powers on an emergency basis at fires. *See* sec. 213.095, Stats. The definition of a police officer and a firefighter in sec. 40.02(48)(b), Stats., (regarding the public employee trust fund) recognizes that members of each category may be temporarily assigned to other duties without losing their identity. However, subsecs. 40.02(48)(b)1 and 2 do not contemplate the proposal submitted by the city of Eau Claire—an employee assigned a position which will include both fire protection and police functions on a regular basis.[3]

Under the city of Eau Claire's plan, a PSO would be permanently "on call" to fight fires. The PSO would always be expected to be available to fight fires as a part of his or her job. This is not a temporary position and is beyond the language of "temporarily assigned" provided in sec. 40.02(48), Stats.

Since the legislature has expressly declared the regulation of police and fire departments to be a matter of statewide concern and that the functions are to be separate and distinct, the city of Eau Claire is

[3]More statutory provisions describing differences and similarities between police officers and firefighters were stated in circuit Judge Thomas H. Barland's trial court decision which are not related here.

not empowered to act to the contrary under its home rule authority. *See* sec. 62.13(12) and 66.01(15), Stats.

The Eau Claire PSO program makes a person who is primarily a police officer responsible for both police and firefighting functions. This person then will act as a firefighter when a fire occurs in the district being patrolled by that officer. When responding to fires, the officer will be subject to the fire command rather than the police command. He or she will thus be shifting from one type of command to the other depending upon whether the officer is functioning as a police officer or a firefighter.

Although there is an overlap between police and firefighting departments as to the common police and fire board, sec. 62.13(1), Stats., numerous statutory provisions indicate fundamental differences in the positions. For instance, in cities of the second class, such as Eau Claire, police officers have two full rest days of 24 consecutive hours during each 192 hours of work (8 days) and police officers may not work more than 8 hours in each 24–hour period, except for emergencies. Section 62.13(7m) and (7n).

Firefighters in cities of the second class must be divided into two or more platoons, each working or on duty "alternatively an equal number of hours or as nearly so as the governing power of the fire department of each such city decides." Section 62.13(11a), Stats. The rest days for firefighters are specifically set forth in sec. 213.13, Stats. The rest requirements for firefighters differ from those granted police officers for cities of the same class.

An attempt by the city of Madison to withdraw from the restrictions of sec. 62.13(7), Stats., was quashed because this court determined that the regulation of police and the need to have an efficient,

dependable police force functioning in all parts of the state was a matter of statewide concern. *Van Gilder v. Madison,* 222 Wis. 58, 84, 89, 267 N.W. 25, 268 N.W. 108 (1936). The legislature also has prescribed specific standards applicable to police officers. Sections 165.85 and 165.86, Stats.

The legislature by acting in related areas has withheld from the municipalities the power to create such a PSO program. The PSO program proposed by the city of Eau Claire would be logically inconsistent with the numerous other statutory provisions recited above. We affirm the decision of the court of appeals upholding the trial court's order enjoining the city of Eau Claire from implementing its proposed public safety officer program.

*By the Court.*—The decision of the court of appeals is affirmed.