William W. WELTER, individually, and as representative of a Class consisting of all City of Milwaukee Police Officers hired on or after July 30, 1947 and before August 1, 1985, Plaintiff-Respondent,

Bradley DEBRASKA and Kenneth J. Elias, individually, and as representatives of a Class consisting of all City of Milwaukee Police Officers hired on or after July 30, 1947 and before August 1, 1985 and Milwaukee Police Association, Plaintiffs,

ALL INDIVIDUALS NAMED ON ADDENDUM A to the COMPLAINT TO INTERVENE, Intervenors-Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE, Defendant-Appellant,†

MILWAUKEE EMPLOYES' RETIREMENT SYSTEM/ANNUITY And PENSION BOARD, Defendant.

Court of Appeals

*No. 96–2770. Submitted on briefs October 7, 1997.—Decided October 28, 1997*

(Also reported in 571 N.W.2d 459.)

---

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Thomas E. Hayes*, special deputy city attorney, of Milwaukee.

On behalf of the plaintiff-respondent and the intervenors-plaintiffs-respondents, the cause was submitted on the brief of *John F. Fuchs* and *Marcia A. Snow* of *Fuchs, Snow, O'Connell & DeStefanis, S.C.,* of Milwaukee.

Before Fine, Schudson and Curley, JJ.

FINE, J.   The City of Milwaukee appeals from the trial court's entry of summary judgment declaring that: 1) the City may not reduce below the conversion-age in effect when he or she was hired the age at which a police officer receiving a Duty Disability Retirement Allowance is converted to a less-favorable Service Retirement Allowance, and 2) officers who received pension installments based on the less-favorable Service Retirement Allowance even though they were entitled to a Duty Disability Retirement Allowance have six years within which to seek the difference with respect to each installment for which they were short-changed. We affirm.

## I.

Since 1947, police officers employed by the City of Milwaukee have been members of an employee retirement system that provides payments to officers who are either retired or who have suffered injuries in the course of their employment that render them disabled.

Officers who are disabled in the course of duty receive a Duty Disability Retirement Allowance. Officers who retire without disability receive a less-favorable Service Retirement Allowance. With the exception of a period when disabled officers were entitled to receive their Duty Disability Retirement Allowance for the duration of their disability for life, officers receiving a Duty Disability Retirement Allowance have been converted to the Service Retirement Allowance when they reach a certain age. This conversion age fluctuated over the years. At times, the City and the unions representing the officers agreed to lower the conversion age.[1] At other times, arbitration awards following impasses in the collective-bargaining process permitted the City to lower the conversion age.

This is a declaratory-judgment action brought by Milwaukee police officers who were eligible for a Duty Disability Retirement Allowance but whose benefits were converted to the Service Retirement Allowance plan at an age lower than the conversion-age in effect when they were hired as police officers and thus became members of the employee retirement system. As noted, the Duty Disability Retirement Allowance is worth more than the Service Retirement Allowance, and these officers receive less money than they would if their benefits were not converted at the earlier age. They contend that their conversion-age rights were vested when they were first hired by the City and became members of the retirement system. The trial court agreed. So do we. They also contend that a six-year statute of limitations applies to their right to

---

[1] Supervisory officers are represented by Milwaukee Police Supervisors Organization. Non-supervisory officers are represented by the Milwaukee Police Association (formerly the Policeman's Professional Protective Association).

recoup underpayments with respect to each install-ment. Again, the trial court agreed, and so do we.

## II.

The case was presented to the trial court on cross motions for summary judgment on stipulated facts. Although we have been assisted by the trial court's well-reasoned written opinion, our review is *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

### A. *Vested Rights*.

Since 1947, Wisconsin law has provided that "annuities and all other benefits" for Milwaukee police officers under their "retirement system" benefit con-tract "shall be obligations" of "the city and of the board administering the system and each member and bene-ficiary having such a [retirement system] benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by other means without [the officer's] consent." Laws of 1947, ch. 441, § 30(2).[2] Moreover, although the City could, under its

_____

[2] Chapter 441 of the Laws of 1947, § 30(2) reads in full:

(2) CONTRACTS TO ASSURE BENEFITS. The benefits of mem-bers, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system cre-ated by chapter 396, laws of 1937, as amended, shall be assured by benefit contracts as herein provided:
(a) Every such member and beneficiary shall be deemed to have accepted the provisions of this act and shall thereby have a benefit contract in said retirement system of which he is such member or beneficiary as of the effective date of this act unless, within a period of 30 days thereafter, he files with the board administering the system a written notice electing that this act

home rule powers, modify by amending or altering some aspects of the retirement system, it could not "modify the annuities, benefits or other rights of any persons who are members of the [retirement] system prior to the effective date of such amendment or alteration." Laws of 1947, ch. 441, § 31.[3] Each of the affected

shall not apply to him. The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided in the law under which the system was established as such law is amended and in effect on the effective date of this act shall be obligations of such benefit contract on the part of the city and of the board administering the system and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.

(b) The board administering the system may issue to each member and beneficiary who shall have a benefit contract under this act a written or printed contract or may supplement the membership certificate or other evidence of participation of the member or beneficiary in the system by endorsement showing that the member of beneficiary has a benefit contract according to the terms of this act but the contract shall be in full force and effect whether or not any written or printed evidence thereof shall be so issued.

(c) Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in the law under which the retirement system was established as such law shall have been amended and be in effect at the date of commencement of his membership.

[3] Chapter 441 of the Laws of 1947, § 31 reads, insofar as material here:

For the purpose of giving to cities of the first class the largest measure of self-government with respect to pension annuity and retirement systems compatible with the constitution and general law, it is hereby declared to be the legislative policy that all future amendments and alterations to this act are matters of local affair and government and shall not be construed as an enactment of state-wide concern. Cities of the first class are hereby empowered

officers who are plaintiffs in this case received "benefit contracts" that conformed with these provisions.

■

Sections 30(2) and 31 of Chapter 441 of the Laws of 1947 are not ambiguous; their meaning is plain. Accordingly, we apply them as written. *See DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982). Under §§ 30(2) and 31, retirement-plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer unless the officer agrees to a change. Although the City does not contend that any of the affected plaintiffs consented to a change in their benefits, it argues that it can, nevertheless, reduce those benefits from what the benefits were when the plaintiffs became members of the retirement system. We discuss the City's contentions in their logical order.

1. The City argues that insofar as the 1947 legislation restricts the City from modifying retirement-system benefits, it is an unconstitutional usurpation of the City's home-rule powers granted by Article XI, § 3(1) of the Wisconsin Constitution. Article XI, § 3(1) provides:

> Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.

to amend or alter the provisions of this act in the manner prescribed by section 66.01 of the statutes; provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration.

Under this provision, "a municipality's ability to regulate matters of statewide concern is limited." *DeRosso Landfill Co., Inc. v. City of Oak Creek*, 200 Wis. 2d 642, 651, 547 N.W.2d 770, 773 (1996). Thus, " 'municipalities may enact ordinances in the same field and on the same subject covered by state legislation where such ordinances do not conflict with, but rather complement, the state legislation.' " *Ibid.* (Quoted source omitted.)

> A municipal ordinance is preempted [by a statute] if (1) the legislature has expressly withdrawn the power of municipalities to act; (2) it logically conflicts with state legislation; (3) it defeats the purpose of state legislation; or (4) it violates the spirit of state legislation. Should any one of these tests be met, the municipal ordinance is void.

*Id.*, 200 Wis. 2d at 651–652, 547 N.W.2d at 773. (Footnotes omitted.)

Crime crosses municipal boundaries. Effective local law enforcement and ensuring that local governments attract to their law-enforcement agencies men and women of the highest caliber is a matter of statewide concern. *Local Union No. 487 v. City of Eau Claire*, 147 Wis. 2d 519, 529–530, 433 N.W.2d 578, 582 (1989) ("[T]he need to have an efficient, dependable police force functioning in all parts of the state [i]s a matter of statewide concern."); *Van Gilder v. City of Madison*, 222 Wis. 58, 75, 83, 267 N.W. 25, 31–32, 35 (1936) (regulation of police officer salaries a matter of statewide concern); *id.*, 222 Wis. at 89, 268 N.W. at 111 (matter of statewide concern "to see that an efficient, dependable police force is functioning in all parts of the state") (*per curiam* on motion for reconsideration). Assuring prospective law-enforcement employees that

their duty disability benefits will not be changed without their consent helps attract qualified applicants and is thus an important component of legitimate state policy.[4]

---

[4] The City cites *State ex rel. Brelsford v. Retirement Bd. of the Policemen's Annuity & Benefit Fund,* 41 Wis. 2d 77, 163 N.W.2d 153 (1968), for the proposition that the regulation of retirement systems applicable to municipal police officers is not a matter of statewide concern. We disagree. *Brelsford* held that pension-plan restrictions on what retired Milwaukee police officers could earn was a matter of local, not statewide, concern, and therefore enforced a Milwaukee Charter Ordinance that was arguably contrary to a state statute that prohibited pension payments to any retired police officer who " 'shall be employed upon salary or wages in any branch of the service of such city.' " *Id.,* 41 Wis. 2d at 80, 86–87, 163 N.W.2d at 154, 157 (citation omitted). Prohibiting retired police officers from being paid from two sources funded by local taxpayers, however, has little impact on citizens outside of the municipality involved: "It would seem that the state would have little interest in whether a retired policeman taught school in Milwaukee or in some other municipality." *Id.,* 41 Wis. 2d at 87, 163 N.W.2d at 157. Ensuring that municipalities have professional and capable law-enforcement officers is, by contrast, of interest to all of the state's citizens. *See Local Union No. 487 v. City of Eau Claire,* 147 Wis. 2d 519, 529–530, 433 N.W.2d 578, 582 (1989) ("[T]he need to have an efficient, dependable police force functioning in all parts of the state [i]s a matter of statewide concern."); *Van Gilder v. City of Madison,* 222 Wis. 58, 89, 268 N.W. 108, 111 (1936) (matter of statewide concern "to see that an efficient, dependable police force is functioning in all parts of the state") (*per curiam* on motion for reconsideration). Thus, although § 31 of Chapter 441 of the Laws of 1947 permitted the City to modify pension-plan elements prospectively and that prospective modification would not impact a matter of statewide concern, the City was prohibited from changing the rules as to any officer once that officer came aboard the system. Thus, the legislature

"All legislative acts are presumed constitutional and every presumption must be indulged to uphold the law if at all possible. The party challenging the constitutionality of a statute has the burden to prove that the statute is unconstitutional beyond a reasonable doubt." *Norquist v. Zeuske*, 211 Wis. 2d 241, 250, 564 N.W.2d 748, 752 (1997) (Internal citation omitted.). Given the clear statewide concern "to have an efficient, dependable police force functioning" in .Milwaukee as elsewhere, *see Local Union No. 487*, 147 Wis. 2d at 529–530, 433 N.W.2d at 582, the argument that the legislature may not restrict the City's ability to reduce police-officer retirement-system benefits without the officers' consent below the level existing when the officers were hired fails. *See Van Gilder*, 222 Wis. at 84, 267 N.W. at 35–36 (invalidating ordinance that attempted to reduce police officer salaries contrary to statute).[5]

■

2. The City argues that an officer's right to a disability pension does not vest until he or she becomes disabled, and cites case law from other jurisdictions in support of that proposition. This argument, however, ignores the legislative command that the critical date is not that of the duty-related disability but the date the officer becomes a member of the retirement sys-

---

reaffirmed that protecting the officers' vested rights *was* a matter of statewide concern.

[5] In light of our conclusion that §§ 30(2) and 31 of Chapter 441 of the Laws of 1947 govern, we consider neither the alternate grounds relied upon by the trial court in granting summary judgment to the plaintiffs nor the plaintiffs' alternate arguments for upholding the judgment. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

tem—the date he or she was first employed by the City as a police officer. Sections 30(2) and 31 of Chapter 441 of the Laws of 1947. Unless a municipal enactment affects a matter of only local concern, it must give way before a state statute with which it conflicts. *See Van Gilder*, 222 Wis. at 84, 267 N.W. at 35–36 (invalidating ordinance that attempted to reduce police officer salaries contrary to statute); *Bell v. City of Elkhorn*, 122 Wis. 2d 558, 563–567, 364 N.W.2d 144, 146–148 (1985) (zoning ordinance must comply with state statute); *Wisconsin Ass'n of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 432–433, 293 N.W.2d 540, 544 (1980) (municipal legislation may not infringe upon state law). As noted in part 1, above, §§ 30(2) and 31, insofar as relevant here, deal with matters of statewide concern and, therefore, govern.

3.  The City also argues that the conversion-age reductions were, in large measure, bargained for and agreed to by the officers' unions in return for what the City calls "substantial consideration" by the City in other areas affecting the officers' employment. Thus, the City argues, it is unfair to let the officers have their cake (the "substantial consideration") and eat it too (their vested rights under the retirement-system plan). The City breaks this argument into two parts: an estoppel argument and a contention that the officers "consented" through their unions to the modifications. We address the latter contention first.

■

The City's argument that the officers should be deemed to have consented to the modification of their vested retirement-system rights because the concessions were agreed-to by their unions ignores that a union may not bargain away the vested rights of its members without the express consent of those mem-

bers. *Valeo v. J.I. Case Co.*, 18 Wis. 2d 578, 589, 119 N.W.2d 384, 391 (1963); *see also Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n.20 (1971); *International Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1482 n.8 (6th Cir. 1983), *cert. denied*, 465 U.S. 1007. There is no evidence in this record that the plaintiffs who are affected by the attempted modification of their vested rights agreed to the changes.

The City's argument that the officers are estopped from objecting to the lower conversion ages is also without merit. The elements of equitable estoppel are: "(1) action or nonaction by the person against whom estoppel is asserted (2) upon which the person asserting estoppel reasonably relies (3) to that person's detriment." *St. Paul Ramsey Med. Ctr. v. DHSS*, 186 Wis. 2d 37, 47, 519 N.W.2d 681, 685 (Ct. App. 1994). Two of these three prerequisites are not present here. First, the affected officers who are plaintiffs in this action never did anything or refrained from doing anything upon which the City relied. Second, the City's reliance on the collective-bargaining negotiations and arbitration awards to vaporize the officers' vested rights was not "reasonable." The governing statutes are clear; that the City's labor negotiators apparently overlooked them or misapprehended the applicable law neither warrants nor permits us to ignore what the statutes require.

B. *Statute of Limitations.*

Both sides agree that the applicable statute of limitations is six years. The City contends that the applicable statute of limitations is the one specified in § 893.53, STATS.—"injury to . . . rights of another, not

496

arising on contract."[6] It argues that the statute began to run from when the lower conversion age was put into effect. The plaintiffs, on the other hand, contend that the applicable statute of limitations is the one specified in § 893.43, STATS.—"action upon any contract."[7] They argue that the statute begins to run when an affected officer receives a pension installment that is less than it should be. We agree with the plaintiffs.

Each of the affected officers received a written employee-retirement-system benefit contract that incorporated the provisions mandated by §§ 30(2) and 31 of Chapter 441 of the Laws of 1947. Receipt of a pension installment payment that is less than that required by contract is a separate breach of that contract. *Jensen v. Janesville Sand & Gravel Co.*, 141 Wis. 2d 521, 527, 415 N.W.2d 559, 561–562 (Ct. App. 1987). Accordingly, the officers have six years to sue on any pension installment that was less than it should have been.

---

[6] This is how the City puts it in its appellate brief: "The City argued [before the trial court] that the Plaintiffs stated a constitutional claim for impairment if the obligation of contract which was governed by the six-year statute of limitation on constitutional claims arising under § 893.53, Stats." Section 893.53, STATS., provides:

**Action for injury to character or other rights.** An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred.

[7] Section 893.43, STATS., provides:

**Action on contract.** An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.