MILWAUKEE POLICE ASSOCIATION and Milwaukee Police Supervisors' Organization, Plaintiffs-Respondents,

v.

The CITY OF MILWAUKEE, Defendant-Appellant,†

MILWAUKEE EMPLOYES' RETIREMENT SYSTEM/ANNUITY AND PENSION BOARD, Defendant-Respondent. [Case No. 97–0820]

MILWAUKEE POLICE ASSOCIATION and Milwaukee Police Supervisors' Organization, Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE, Defendant-Appellant,

MILWAUKEE EMPLOYES' RETIREMENT SYSTEM/ANNUITY AND PENSION BOARD, Defendant-Respondent. [Case No. 97–2641]

Court of Appeals

*Nos. 97–0820, 97–2641. Submitted on briefs September 1, 1998.—Decided October 6, 1998.*

(Also reported in 588 N.W.2d 636.)

†Petition to review denied

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Thomas E. Hayes*, special deputy city attorney, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *John F. Fuchs* and *Marcia A. Snow* of *Fuchs, Snow, O'Connell & DeStefanis, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *James W. Greer* and *Charles C. Mulcahy* of *Whyte Hirschboeck Dudek S.C.*, of Milwaukee.

Amicus Curiae brief was filed by *Timothy E. Hawks* and *Jeffrey P. Sweetland* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, of Milwaukee, for the Milwaukee Professional Fire Fighters Association, Local 215, IAFF, AFL-CIO.

Before Wedemeyer, P.J., Fine and Curley, JJ.

FINE, J. The City of Milwaukee appeals in 97–0820 from a judgment declaring that City Charter Ordinance Number 950929, which merged the duty-disability and retirement funds administered by the Milwaukee Employes' Retirement System, deprived members and beneficiaries of the retirement fund of their vested property rights in the fund.[1] The trial court granted remedial injunctive relief. The City also appeals, in 97–2641, from a judgment directing that it pay the attorneys fees of the Milwaukee Police Association and the Milwaukee Employes' Retirement System. The appeals concern the same dispute and have been consolidated for decision.

---

[1] The word "employee" is spelled as "employe" in the statutes and ordinances quoted in this opinion.

The matters that are the subject of this appeal were decided on summary judgment and present only issues of law. Accordingly, our review is *de novo*. *See Welter v. City of Milwaukee*, 214 Wis. 2d 484, 488, 571 N.W.2d 459, 462 (Ct. App. 1997). We modify and, as modified, affirm the judgment in 97–0820. We reverse the judgment in 97–2641 and remand for further proceedings.[2]

**Appeal Number 97–0820**

The Milwaukee Employes' Retirement System was created by state statute in 1937. Laws of 1937, ch. 396. At that time, police officers employed by the City were not eligible to be members. That changed in 1947, when the legislature enacted chapter 441 of the Laws of 1947. Chapter 441 also gave Milwaukee home-rule powers to modify provisions applicable to the Milwaukee Employes' Retirement System, but declared that the City could not "modify the annuities, benefits or other rights of any persons who are members of the [retirement] system prior to the effective date of such amendment or alteration." Laws of 1947, ch. 441, § 31. The 1947 statute also mandated that the employees' rights to the "annuities and other benefits" offered by the retirement system be "vested" and that those "annuities and other benefits . . . shall not be diminished or impaired by subsequent legislation or by any other means without [their] consent." Laws of 1947, ch. 441, § 30(2)(a). *See Welter*, 214 Wis. 2d at 488, 571 N.W.2d at 462.[3] This limitation on the City's home-rule

---

[2] An *amicus curia* brief supporting the City's positions in both appeals has been filed by the Milwaukee Professional Fire Fighters Association, Local 215, IAFF, AFL-CIO.

[3] Chapter 36 of the Milwaukee City Charter, which governs the Milwaukee Employes' Retirement System, also recognizes

powers to modify the pension rights of its employees covered by the statute means that "retirement-plan benefits in effect when [an employee] becomes a member of the retirement system are vested as to that [employee] unless the [employee] agrees to a change." *Id.*, 214 Wis. 2d at 490, 571 N.W.2d at 463. It also means that each employee has a protectable property interest in the plan's integrity. *See Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 552, 558–560, 544 N.W.2d 888, 889, 891–892 (1996).

Until 1972, duty-disability benefits for covered employees were paid from the retirement fund. In 1972, chapter 36 of the Milwaukee City Charter was amended by Charter Ordinance 382 to do three things that are material to this appeal. First, a special fund was created to pay duty-disability benefits, and the City was required to contribute to that fund sufficient sums to meet the fund's obligations.[4] Second, chapter

the vested-rights interests of the system's members. Section 36–13–2–a provides that each member "shall . . . have a benefit contract in" the Milwaukee Employes' Retirement System, and:

> The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided under this act and as amended shall be obligations of such benefit contract on the part of the city and of the board administering the system and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.

[4] Section 36.05(3) of the Milwaukee City Charter was amended to add the following subsection:

> (d) Duty disability retirement allowances shall be paid specifically from a special fund created for that purpose and the city shall be liable for contributions to such fund in order that it may be adequate to meet the required payments. City agencies that are also covered by this act shall be required to contribute to such fund

36 was amended to prohibit the payment of duty-disability benefits from any source other than the special fund.[5] Third, the amendment attempted to further ensure the retirement fund's integrity by reaffirming that it was separate from other funds, and that "maintenance of reserves in the retirement fund" was "mandatory."[6]

By 1995, the retirement fund had a substantial surplus, and the City did not have to contribute to it. The duty-disability fund, on the other hand, was running a deficit, and the City was looking for a way to stop making the required payments. In November of that year, the City adopted Charter Ordinance Number 950929, which eliminated the wall between the duty-disability fund and the retirement fund, and provided

---

the cost of duty disability allowances for members in their employment who are entitled thereto.

The amount of the required contributions was to be determined by an actuary, who "shall certify the contributions required of the city and the city agencies to provide such benefits." MILWAUKEE CITY CHARTER § 36.08(2)(c), *as amended by* CHARTER ORDINANCE 382.

[5] Section 36.08(2)(c) of the Milwaukee City Charter was created to provide that duty-disability benefits "shall be paid only from a fund established for such purpose and such benefits shall not be paid from any other funds of the retirement system. It shall be a violation of law to do so."

[6]

The creation and maintenance of reserves in the ~~pension accumulation~~ retirement fund, the maintenance of annuity reserves and pension reserves as provided for, and regular interest creditable as provided for to the various funds, shall be mandatory and shall be obligations of the city and city agencies whose employes are under this act.

MILWAUKEE CITY CHARTER § 36.13(4)(a), *as amended by* CHARTER ORDINANCE 382 (deletions indicated by interlineation, additions indicated by underlining).

for payment of duty-disability benefits from the retirement fund.[7] The Milwaukee Police Association and the Milwaukee Police Supervisors' Organization filed this action on behalf of their members, who are also members of the Milwaukee Employes' Retirement System, seeking a declaratory judgment that Charter Ordinance Number 950929 was unlawful. The Milwaukee Employes' Retirement System/Annuity and Pension Board, a defendant in the unions' action, cross-claimed against the City seeking a determination of its obligations.

As we have seen, the members of the Milwaukee Employes' Retirement System have vested rights in the benefits provided by the system as a result of their membership, and those vested rights may "not be diminished or impaired . . . without [their] consent." Laws of 1947, ch. 441, § 30(2); MILWAUKEE CITY CHARTER § 36–13–2-a; *see Welter*, 214 Wis. 2d at 488–490, 571 N.W.2d at 462–463. The City, seeking to implement Charter Ordinance Number 950929 and thus draw upon the retirement fund, which, it claims, is significantly over-funded, contends that any impairment of the retirement fund would be *de minimis* because little money is involved compared to the retirement fund's assets, and that finding a source of duty-

---

[7] Charter Ordinance Number 950929 provides, as material here:

> Effective January 1, 1996, the duty disability, special fund shall be merged with the retirement fund. Thereafter, there shall no longer be separate determinations each year of the funds necessary to provide all necessary duty disability benefits under s. 36–05 and benefits arising under s. 36–05–3-c shall be paid from the retirement fund.

The references to "36–05" and "36–05–3-c" are to duty-disability benefits authorized by those provisions.

disability-benefits money other than from current taxes is in the public interest. These arguments are contrary to law and are without merit.

■

Under the due-process clause of the Fourteenth Amendment of the United States Constitution, money may not be diverted from a benefit fund in which its members have vested property rights. *Association of State Prosecutors*, 199 Wis. 2d at 561–563, 544 N.W.2d at 893 (transfer of funds from county pension fund to state pension fund violated constitutional prohibition against taking without due process of law). This is true irrespective of how large or small the diversion. *Id.*, 199 Wis. 2d at 561, 544 N.W.2d at 893 ("Governmental takings do not become exempt from due process requirements simply because they may be actuarially insignificant."). Thus, although the state has "a limited power to adjust or amend a retirement plan in certain situations," and may intervene to "preserve the actuarial soundness of a plan or to salvage" it if it is financially strapped, it may not raid it, even by a little bit. *Id.*, 199 Wis. 2d at 562–565, 544 N.W.2d at 892–894.[8] Accordingly, Charter Ordinance Number

_____

[8] The full quote from *Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 544 N.W.2d 888 (1996), referenced above is: "We recognize that the legislature should retain a limited power to adjust or amend a retirement plan in certain situations, such as when it is necessary to preserve the actuarial soundness of a plan or to salvage financially troubled funds." *Id.*, 199 Wis. 2d at 563, 544 N.W.2d at 893. We read this sentence as authorizing state intervention to reduce benefits or modify the timing of their receipt to salvage a financially troubled fund, which was the situation in *Spina v. Consolidated Police and Firemen's Pension Fund Comm'n*, 197 A.2d 169 (N.J. 1964), cited by *Association of State Prosecutors*, 199 Wis. 2d at

950929 may not be used to divert from the retirement fund monies that are attributable to employees who have vested rights in the fund—that is, those who became members of the retirement fund before the ordinance's effective date.[9] We affirm and, because the judgment did not recognize that Charter Ordinance Number 950929 applies to employees who become members of the Milwaukee Employes' Retirement System after the ordinance's effective date, modify the judgment of the circuit court accordingly.[10]

563–564, 544 N.W.2d at 893–894. We do not read the sentence as authorizing the raid of one fund to salvage the actuarial stability of another—in effect, to rob Peter to pay Paul. Indeed, *Association of State Prosecutors* condemned the statute at issue in that case because it authorized transfer of funds from the county plan to the state plan "not to improve the actuarial soundness of the [county] pension plan," but just the reverse. *Id.*, 199 Wis. 2d at 564, 544 N.W.2d at 894. Significantly, the statute in *Spina* did not, as does the statute here, provide for vesting of pension-benefit rights. *Spina*, 197 A.2d at 173.

[9] The brief on this appeal submitted by the police unions concedes, as it must, that new employees are subject to Charter Ordinance Number 950929: "In this case, Respondents do not claim that the City cannot prospectively change its funding obligation for duty disability benefits as to new employees by using their reserves in the Retirement Fund for that purpose."

[10] In view of our resolution of Appeal Number 97–0820 on Fourteenth Amendment due-process grounds as analyzed by *Association of State Prosecutors*, we do not discuss the police unions' alternative grounds for affirmance of the judgment, or the City's responses. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground"); *see also Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 38 n.29, 558 N.W.2d 83, 99 n.29 (1997) (not reaching other grounds).

As noted, the trial court entered a judgment directing that the City pay the attorneys fees of the Milwaukee Police Union, which prosecuted the plaintiffs' case seeking to protect the retirement fund from the merger required by Charter Ordinance Number 950929, and directing that the City pay the attorneys fees of the Milwaukee Employes' Retirement System.[11] We reverse the judgment and remand this matter to the trial court for further proceedings.

■

Wisconsin law recognizes that parties to an action that either creates or preserves a fund because of their efforts are entitled to reimbursement of their attorneys fees from the fund protected or created. *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 36, 558 N.W.2d 83, 98 (1997) ("unfair to allow a class to share in the benefits of an action, while forcing the litigating plaintiffs to shoulder all of the

---

[11] Technically, the trial court's judgment awarding attorneys fees was entered after motions for reconsideration, relief from judgment, and clarification of judgment filed by the police unions and by the Milwaukee Employes' Retirement System. The precise nature of and reason for these motions are not material to this appeal, except that the Milwaukee Employes' Retirement System argues that the resulting judgment was a product of the trial court's discretion that requires that we review the judgment under an erroneous-exercise-of-discretion standard. *See Kovalic v. DEC Int'l*, 186 Wis. 2d 162, 166, 519 N.W.2d 351, 353 (Ct. App. 1994). A trial court acts within its discretion, however, only insofar as it bases its decision on a correct view of the law. *Ibid.* As we have already indicated, this case presents only issues of law, and this encompasses the trial court's judgment awarding attorneys fees. Our review is, therefore, *de novo.*

costs of the lawsuit"). *Wisconsin Retired Teachers* adopted a three-factor test to determine whether attorneys fees should be awarded to a victorious party from a common fund.

> First, those benefiting from the litigation should be small in number and easily identifiable. Second, the benefits should be traceable with some accuracy. Third, the attorney fees should be capable of being "shifted with some exactitude to those benefiting."

*Id.*, 207 Wis. 2d at 37, 558 N.W.2d at 98 (quoted source omitted). Given that the beneficiaries of the fund protected in *Wisconsin Retired Teachers* were employees of the State of Wisconsin enrolled in the Wisconsin Retirement System who retired after October 1, 1974, *see id.*, 207 Wis. 2d at 12 n.8, 16, 558 N.W.2d at 88 n.8, 90, the phrase "small in number" in the decision's three-part test must relate to whether "those benefitting from the litigation" are "easily identifiable." Applying that test here, the members and beneficiaries of the retirement fund whose interests were vindicated by the efforts of the plaintiffs—that is, those who became members of the Milwaukee Employes' Retirement System before the effective date of Charter Ordinance Number 950929 and their beneficiaries—are sufficiently "small in number and easily identifiable" to satisfy the first factor.

██ The second and third factors in the test adopted by *Wisconsin Retired Teachers* are also satisfied here. The "benefits" attributable to the plaintiffs' efforts are the monies not diverted from the retirement fund to pay disability benefits, as Charter Ordinance Number 950929 requires. Additionally, the shift of the responsibility for attorneys fees from the plaintiffs, who should

not be required to carry the other retirement-fund members and beneficiaries on their backs, *see Wisconsin Retired Teachers*, 207 Wis. 2d at 36, 558 N.W.2d at 98 ("unfair to allow a class to share in the benefits of an action, while forcing the litigating plaintiffs to shoulder all of the costs of the lawsuit"), to the fund can be made with sufficient "exactitude" because the benefit accruing to the members and beneficiaries of the retirement fund can be measured by the monies that would have been taken but for the plaintiffs' successful litigation. *See id.*, 207 Wis. 2d at 37, 558 N.W.2d at 98 ("Because the attorney fees are 'taken off the top,' a recipient annuitant will pay litigation costs in exact proportion to the distribution that he or she receives."). Accordingly, the Milwaukee Police Association is entitled to reimbursement of its attorneys fees from the fund, not the City as the trial court determined and as the plaintiffs concede was error.[12]

---

[12] In its oral decision, the trial court found that the Milwaukee Employees' Retirement System was liable for the plaintiffs' attorneys fees but that the City was ultimately liable under section 36–13–4-b of the Milwaukee City Charter, which provides that "all expenses in connection with the administration and operation of the retirement system are hereby made obligations of the city and city agencies." Shifting the responsibility for attorneys fees to the city *via* section 36–13–4-b would, in our view, violate the American Rule, which generally requires parties to bear their own costs of litigation. *See Wisconsin Retired Teachers Ass'n*, 207 Wis. 2d at 36, 558 N.W.2d at 98 ("Generally, a court may require a losing litigant to reimburse the prevailing party's attorney fees only when expressly authorized by statute or contract."). Moreover, the common-fund doctrine shifts the burden of attorneys fees to those who have benefitted from the litigation and is not designed to punish an opposing party. The trial court's decision making the City liable not only would not have those who benefitted from the plaintiffs' actions share in

The trial court also directed the City to pay the attorneys fees incurred by the Milwaukee Employes' Retirement System, even though the System was insured for those fees, was reimbursed for those fees by its carrier, and the City paid the insurance premiums. The attorneys fees awarded by the trial court were to be repaid to the insurance company. The trial court based its decision on section 36–13–4-b of the Milwaukee City Charter, which provides that "all expenses in connection with the administration and operation of the retirement system are hereby made obligations of the city and city agencies." The City fulfilled its responsibility under this provision by securing insurance for the Milwaukee Employes' Retirement System. The System cites neither precedent nor reason as to why

the plaintiffs' expenses in securing that result, but it would also punish the City. This is contrary to law:

> We further observe that the common fund doctrine is consistent with the American Rule. A losing litigant does not pay attorney fees in addition to the amount of recovery. Rather, attorney fees are deducted from the recovery. Thus, a losing litigant is no better or worse off as a result of the doctrine's application.

*Id.*, 207 Wis. 2d at 38, 558 N.W.2d at 99. Here, the City lost, and it will have to make the contributions to the duty-disability fund that Charter Ordinance Number 950929 would have prevented. The City is not required to pay the plaintiffs' attorneys fees as well. The City may, of course, have to pay an increased contribution to the retirement fund in the future because the fund will pay the plaintiffs' attorneys fees, as required by the common-fund doctrine, and thus will have less money than it would have had if Charter Ordinance Number 950929 was never enacted and this lawsuit never brought. But those increased contributions, if and when they are made, would be a consequence of the City's loss of this lawsuit, not because of any fee-shifting.

the City should, in effect, pay twice—the insurance premium and the costs of the insured-against event.[13]

We reverse the judgment, and remand this matter to the trial court for implementation of the mechanism by which the plaintiffs will be reimbursed for their attorneys fees from the common fund they protected. We understand that there is no dispute over the amount or reasonableness of the fees.

*By the Court.*—Judgment in 97–0820 modified and, as modified, affirmed. Judgment in 97–2641 reversed, and cause remanded.

---

[13] The insurance company is not a party in this case.