WISCONSIN FEDERATION OF NURSES AND
HEALTH PROFESSIONALS, LOCAL 5001, AFT, AFL-CIO
and Association of Milwaukee County Attorneys,
Plaintiffs-Respondents,†

Susan SCHWEGEL and Susan Jaskulski, Plaintiffs,

v.

MILWAUKEE COUNTY, Defendant-Appellant.

Court of Appeals

*No. 2012AP2490. Submitted on briefs August 6, 2013.
—Decided October 1, 2013.*

2013 WI App 134

(Also reported in 839 N.W.2d 869.)

† Petition for Review granted February 19, 2014.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alan M. Levy* of *Lindner & Marsack, S.C.*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jeffrey P. Sweetland* of *Hawks Quindel, S.C.*, Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Milwaukee County appeals the "Final Order and Judgment" (uppercasing omitted) granting summary judgment to the Wisconsin Federation of Nurses and Health Professionals, Local 5001, AFT, AFL-CIO, the Association of Milwaukee County Attorneys, Susan Schwegel and Susan Jaskulski, ruling that the

unions' members and Schwegel and Jaskulski had "a vested benefit contract requiring the County to reimburse [their] Medicare Part B premiums" when they retire from County employment even though they were not yet retired when the County eliminated that benefit. The parties' contentions are based on their interpretation of various Milwaukee County General Ordinances; the parties have not pointed to any collective-bargaining agreement that affects the merits of this appeal. The Dissent chastises us in a footnote for ignoring the parties' collective bargaining agreements. The Dissent, however, points to no provision in any collective bargaining agreement that trumps the ordinances we uphold. Thus, as the Dissent points out in its ¶ 19, the agreement covering the nurses says that it expired on December 31, 2012. As we show in ¶ 8, this is wholly consistent with the revised ordinance. There is no conflict, and the Dissent does not develop any argument that there is. Further, the Dissent also notes in ¶ 19 that the collective bargaining agreement with the Association of Milwaukee County Attorneys expired on December 31, 2011. As we also show in ¶ 8, this, too, is wholly consistent with the revised ordinance. There is no conflict, and the Dissent does not develop any argument that there is, other than its preference for the two court of appeals' decisions that, as we show below, the Wisconsin Supreme Court declined to follow. This is the most likely reason why the unions and their members in their forty-eight-page brief, submitted by a prominent and well-respected law firm, do not argue that any of the collective bargaining agreements "affects the merits of this appeal," as we state and with which the Dissent disagrees. We reverse.

## I.

¶ 2. This dispute was presented to the circuit court by a joint stipulation from which we draw the

facts material to this appeal. We thus review *de novo* the legal issues presented by this appeal. *See Loth v. City of Milwaukee*, 2008 WI 129, ¶ 10, 315 Wis. 2d 35, 39, 758 N.W.2d 766, 768; *Pasko v. Milwaukee County*, 2013 WI App 91, ¶ 2, 349 Wis. 2d 444, 448, 836 N.W.2d 461, 463.

¶ 3. The Federation of Nurses and Health Professionals is "the certified collective bargaining representative of a bargaining unit consisting of certain non-supervisory registered nurses, occupational therapists, music therapists, forensic chemists and other health care professionals" working for the County. Schwegel is a member of the Federation, and has been a County employee since March of 1990. The Association of Milwaukee County Attorneys is "the certified collective bargaining representative of a bargaining unit consisting of certain non-supervisory attorneys" working for the County. Jaskulski is a member of the Association, and has been a County employee since June of 1989. The unions' members are members of the Milwaukee County Retirement System.

¶ 4. The specific issue presented by this appeal is governed by various subsections of General Ordinance § 17.14(7), which is the County's "Group Health Benefit Program" for its employees.

¶ 5. General Ordinance § 17.14(7)(c), as amended in 1989, provided:

> Retired members of the County Retirement System who are eligible for continuing their health insurance benefits at County expense under the provision of (h) of this section shall be eligible for reimbursement of the cost of their Medicare Part B premiums, as well as the Medicare Part B premiums of their eligible spouse and dependents.

General Ordinance § 17.14(7)(h), as amended in 1989, declared, as material here, that the provisions of Gen-

eral Ordinance § 17.14(7)(a) "shall apply to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employe[e]." Section 17.14(7)(a) provided: "The County shall pay the full monthly cost of providing such [Group hospital and medical benefits] coverage for employe[e]s who commenced their employment with Milwaukee County prior to July 31, 1989."[1]

¶ 6. Section 17.14(7)(h) was amended in 1996 to add the following: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in [General Ordinance §] 201.24 (5.91)." The Federation et al. tell us that the reference to "(5.91)" was a "drafting error" and should be "(5.10)." The County does not dispute this, and there is no General Ordinance § 201.24 (5.91). General Ordinance § 201.24 (5.10) reads: "Members who retire with sufficient pension service credit as noted in chapter 17 of the Code, or the appropriate labor agreement, shall be provided with paid health insurance *as noted* in chapter 17 of the Code, however such benefit shall not be funded via the pension fund."[2] (Emphasis added.) Thus, the "paid health insurance" promise in General Ordinance § 201.24 (5.10) is made subject to and does not supersede anything in chapter 17 of the General Ordinances.

¶ 7. In 2005, General Ordinance § 17.14(7)(c) (the Medicare Part B premiums provision) was renumbered as § 17.14(7)(ee) and read, as did former § 17.14(7)(c):

---

[1] This provision is now General Ordinance § 17.14(7)(dd), and, as material, reads: "The County shall pay the full monthly cost of providing such coverage to retired members of the County Retirement System with fifteen (15) or more years of creditable pension service as a County employee."

[2] MILWAUKEE COUNTY CODE OF GENERAL ORDINANCES, § 201.24 (5.10) may be found at: http://library.municode.com/index.aspx?clientId=12598 (last visited Aug. 8, 2013).

Retired members of the County Retirement System who are eligible for continuing their health insurance benefits at County expense under the provision of [(h)] of this section shall be eligible for reimbursement of the cost of their Medicare Part B premiums, as well the Medicare Part B premiums of their eligible spouse and dependents.

This changed in 2010, when § 17.14(7)(ee) was amended to remove the County's liability for Medicare Part B premiums for some Milwaukee County employees:

The provisions of section (ee) shall not apply to members not represented by a collective bargaining unit who retired and began receiving benefits from the Milwaukee County Employees Retirement System after April 1, 2011. For members represented by a collective bargaining unit, the provisions of this section shall be applicable in accordance with their respective labor contracts.

This, of course, did not apply to the union members here who were, obviously, "represented by a collective bargaining unit."

¶ 8. That changed a year later, though, when the following language, as material, was added in 2011, after the phrase "began receiving benefits from the Milwaukee County Employees Retirement System after April 1, 2011": "nor to members represented by . . . the Association of Milwaukee County Attorneys, . . . who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2011, nor to members represented by the Federation of Nurses and Health Professionals who retired and began receiving benefits from the Milwaukee County Employees Retirement System after De-

cember 31, 2012." The revision changed General Ordinance § 17.14(7)(ee) to read, as material:

> The provisions of section (ee) shall not apply to members not represented by a collective bargaining unit who retired and began receiving benefits from the Milwaukee County Employees Retirement System after April 1, 2011, nor to members represented by . . . the Association of Milwaukee County Attorneys, . . . who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2011, nor to members represented by the Federation of Nurses and Health Professionals who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2012.

Accordingly, after the 2011 change, the County's liability for Medicare Part B premiums ended with respect to:

(1) members of the retirement system who were not represented by a union and "who retired and began receiving benefits from the Milwaukee County Employees Retirement System after April 1, 2011";

(2) members of the retirement system who were represented by the Association of Milwaukee County Attorneys and "who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2011"; and

(3) members of the retirement system who were represented by the Federation of Nurses and Health Professionals and "who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2012."

Thus, according to the County, members of the Association had to retire no later than December 31, 2011,

and members of the Federation had to retire no later than December 31, 2012, in order for the County to pay their Medicare Part B premiums.

¶ 9. In a brief oral decision, the circuit court determined that "benefits that exist at the time [the employee] joined the system are guaranteed to [the employee] unless [the employee] personally agree[s] to a reduction." The circuit court noted that the decisions upon which it relied, *Welter v. City of Milwaukee*, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), and *Rehrauer v. City of Milwaukee*, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644, may have conflicted with *Loth*, opining "I have a difficult time reconciling *Loth* with *Welter* and *Rehrauer*." Nevertheless, it decided to follow *Welter* ("I don't see that you get around *Welter*"), and granted summary judgment to the Federation et al. In our view, *Loth* controls, and we reverse.

## II.

¶ 10. *Loth* concerned an employee who contended that he was entitled to a vested health-insurance retirement benefit because he had completed the required fifteen years of service before the City of Milwaukee eliminated that benefit, even though he retired after the benefit was eliminated. *Loth*, 2008 WI 129, ¶ 3, 315 Wis. 2d at 37, 758 N.W.2d at 767 ("Loth argues that although he could not receive a retiree's health insurance benefit until he retired at age 60, he earned the retiree benefit upon his completion of 15 years of service. According to Loth, attaining the retirement age of 60 and retiring are mere conditions precedent to receipt of the free health insurance benefit."). *Loth* held that the employee was not entitled to the benefit until he had satisfied *all* the requisites: (1) length of ser-

vice; (2) reaching the retirement age; *and* (3) actually retiring. *Id.*, 2008 WI 129, ¶¶ 6–7, 315 Wis. 2d at 38–39, 758 N.W.2d at 767–768. Here, although the union members may have satisfied, as have the named plaintiffs, the first two criteria (length of service and reaching retirement age) none satisfied the third criterion—actual retirement.

¶ 11. We are, of course, bound by *Loth. See Blake v. Racine County Human Services Department*, 2013 WI App 45, ¶ 2, 347 Wis. 2d 499, 502, 831 N.W.2d 439, 441. We do not have to discuss or distinguish either *Welter* or *Rehrauer*, except to note that we agree with the circuit court that *Loth* appears at odds with both *Welter*, 214 Wis. 2d at 494–495, 571 N.W.2d at 464 ("The City argues that an officer's right to a disability pension does not vest until he or she becomes disabled, and cites case law from other jurisdictions in support of that proposition. This argument, however, ignores the legislative command that the critical date is not that of the duty-related disability but the date the officer becomes a member of the retirement system—the date he or she was first employed by the City as a police officer.") and *Rehrauer*, 2001 WI App 151, ¶ 11, 246 Wis. 2d at 873, 631 N.W.2d at 648 ("[A]n affected employee gains vested rights in subsequently-negotiated benefits, at the highest level contractually established at any time during the course of active duty."), and that *Loth* discussed neither decision. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

¶ 12. Largely ignoring *Loth*, the Federation, et al., contend that the vesting language in the 1996 change to General Ordinance § 17.14(7)(h), as well as the vesting provisions in Chapter 138 of the Laws of 1945 and Chapter 405 of the Laws of 1965 prevent the County from eliminating an inchoate Medicare Part B benefit

before it has been fully earned. The pertinent language of the Acts is:

¶ 13. Chapter 138 (creating section 13a of Chapter 201 of the Laws of 1937):

(2) CONTRACTS TO ASSURE BENEFITS. The benefits of members, whether employe[e]s in service or retired as beneficiaries . . . shall be assured by benefit contracts as herein provided:

(a) . . . The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided in the law under which the system was established as such law is amended and in effect on the effective date of this act shall be obligations of such benefit contract on the part of the county and of the board administering the system and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.

. . .

(c) Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in the law under which the retirement system was established as such law shall have been amended and be in effect at the date of commencement of his membership.

¶ 14. Chapter 405, section 2 (amending Chapter 201 of the Laws of 1937 by creating sections 21 and 22):

Section 21. . . . Each county which is required to establish and maintain a retirement system pursuant

to this act is hereby empowered, by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change.

The Federation, et al., contend that these provisions prevent the County from eliminating the Medicare-Part-B-premiums benefit even though it was not yet fully earned. The vested benefit here, however, is the *eligibility* to have the County reimburse a retiree's Medicare Part B premiums—under *Loth*, this *eligibility does not become entitlement* until all of the prerequisites are met. It is true, of course, that once eligibility matures into entitlement, a benefit may not be retroactively modified or eliminated. *See Loth*, 2008 WI 129, ¶ 39, 315 Wis. 2d at 50, 758 N.W.2d at 773 ("The City is not attempting to modify any contractual obligation to Loth. Loth did not accept the City's unilateral promise of no-premium-cost health insurance benefits; he had not fully performed the services entitling him to such benefits when the City amended in [*sic*] policy in 2002 effective in 2004."); Section 21 of Chapter 201 of the Laws of 1937 as created by Chapter 405, § 2 of the Laws of 1965 ("no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system *prior to the effective date of any such change.*") (Emphasis added.). But before the employee has fulfilled the entitlement prerequisites, the County was free to change or eliminate it. *See Loth*, 2008 WI 129, ¶ 47, 315 Wis. 2d at 54, 758 N.W.2d at 775 (City could modify Loth's benefit package because he "had not satisfied all

three requirements" before the effective date of the changes.); *Champine v. Milwaukee County*, 2005 WI App 75, ¶ 19, 280 Wis. 2d 603, 617–618, 696 N.W.2d 245, 252 ("Our holding today does not forever bind the County to pay out all sick allowance that an employee will accrue in the future, and in that respect it is responsive to the concerns of the County that, in the absence of a collective bargaining agreement or employment contract, it should not be bound to continue providing a benefit it now regrets offering. The ability to obtain payout for sick allowance accrued after March 14, 2002, may be modified prospectively by the County.").

██

¶ 15. Although the Federation, et al., have tried to reframe the nature of the contract between the County and its employees as a bilateral rather than a unilateral contract (so as to avoid *Loth*), a contract is "unilateral," as *Loth* at least tacitly recognized, when the offer (here, payment of Medicare Part B premiums; in *Loth*, payment of health-insurance premiums) cannot be accepted without the happening of something down the road that may or may not happen—retirement in both *Loth* and here. *See Compton v. Shopko Stores, Inc.*, 93 Wis. 2d 613, 625–626, 287 N.W.2d 720, 726 (1980) (Working for an employer that offered an executive bonus plan was a "binding unilateral contract" that entitled the employee to the bonus "only upon the employee's completion of the required service.").

¶ 16. As we have seen, the union members' inchoate eligibility for County payment of their Medicare Part B premiums did not mature into an entitlement because they did not retire before the deadlines, even though they could have. Accordingly, under *Loth*, we must reverse the circuit court's grant of summary judgment to

the Federation, et al., and remand the matter to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order and judgment reversed and cause remanded with directions.

¶ 17. KESSLER, J. (*dissenting*). I conclude for the reasons explained below that *Loth* does not apply to benefits established by collective bargaining agreements. We are therefore bound by our holdings in *Welter* and *Rehrauer*, and I would affirm the circuit court.

¶ 18. The Majority asserts that "the parties have not pointed to any collective-bargaining agreement that affects the merits of this appeal." Majority, ¶ 1. This is incorrect. The Majority quotes selectively from the parties' Stipulation, omitting explicit reference to the collective bargaining agreements in effect for both unions in 2011, and ignoring the pension vesting provisions and prohibitions against diminution of benefits contained in the enabling statutes setting the requirements for County retirement programs when those collective bargaining agreements were agreed upon.

¶ 19. The Stipulation establishes that, at times material to this litigation, there was a collective bargaining agreement in effect between Milwaukee County and both the Wisconsin Federation of Nurses and Health Professionals, Local 5001 ("the WFNHP"), and the Association of Milwaukee County Attorneys ("the AMCA"). The Stipulation acknowledges that the collective bargaining agreements did not expire until December 31, 2012, for WFNHP and December 31, 2011, for AMCA and that each collective bargaining agreement provided vested retirement benefits:

> [The] WFNHP and the County are parties to *a collective bargaining agreement ("CBA") covering the WFNHP Unit's* wages, hours and conditions of employ-

ment including but not limited to *coverage under the County's group health benefit program, which will expire on December 31, 2012.*

The provisions of the first paragraph of MCGO § 17.14(7)(dd) apply to members of the WFNHP Unit whose County employment began before September 27, 1995.

AMCA's last CBA with the County covering the AMCA's wages, hours and conditions of employment, including but not limited to coverage under the County's group health benefit program expired on December 31, 2011.

The provisions of the first paragraph of MCOG § 17.14(7)(dd) apply to members of the AMCA Unit whose County employment began before January 1, 2006.

(Emphasis added.)

¶ 20. Specifically, the parties also agreed that the Laws of 1945, Chapter 138, enabling the Milwaukee County Employees Retirement System, provided:

The benefits of *members, whether employes in service or retired* as beneficiaries . . . *shall be assured by benefit contracts* as herein provided:

(a) . . . *The annuities and all other benefits in the amounts and upon the terms and conditions* in all other respects as provided in the law under which the system was established as such law is amended and *in effect on the effective date of this act shall be obligations on the part of the county* . . . and *each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.*

(Emphasis added.) The parties also agreed that in 1965, Chapter 405 provided in relevant part:

434

> Each county which is required to establish and maintain a retirement system pursuant to this act is hereby empowered by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, *but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change.*

(Emphasis added.) The Stipulation does not identify later changes to this language in Chapter 405.

¶ 21. *Loth*, relied on as controlling by the Majority, *see* Majority, ¶ 9, involved an *unrepresented management employee* who claimed that "he earned the retiree benefit upon his completion of 15 years of service" although he could not retire until later when he reached age 60. *See* Majority, ¶ 10; *Loth*, 315 Wis. 2d 35, ¶ 13. The Majority describes *Loth* as holding that "the employee was not entitled to the benefit" until he actually retired. Majority, ¶ 10. I conclude that the Majority has ignored a critical fact in *Loth*—that Loth was *not* covered by a collective bargaining agreement— which makes *Loth* inapplicable to the case before us.

¶ 22. As "the unifying law defining and law development court[,]" our supreme court necessarily chooses its words carefully, and for a purpose. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997). The court described Loth as a "management employee," or quotes from materials using the phrase "management employee," not once, but over twenty times in the opinion. The court explains that "[t]he City and Loth never formed a contract obligating the City to provide Loth with no-premium-cost retirement health insurance benefits before Loth retired." *Loth*, 315 Wis. 2d 35, ¶ 43.

¶ 23. *Loth* was decided in 2008, many years after our holdings in *Welter* (1997) and *Rehrauer* (2001). Both *Welter* and *Rehrauer* involved represented employees covered by a collective bargaining agreement. Both cases involved claims that the plaintiffs were entitled to duty disability retirement benefits provided in the collective bargaining agreements during the course of the plaintiffs' employment, but which were rescinded or substantially changed prior to the time the plaintiffs became disabled, or retired while disabled.

¶ 24. We held in *Welter* that under the City enabling statute (Sections 30(2) and 31 of Chapter 441 of the Laws of 1947), the City "*retirement-plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer* unless the officer agrees to a change." *See Welter*, 214 Wis. 2d at 491 (emphasis added). We specifically rejected the City's argument that "an officer's right to a disability pension does not vest until he or she becomes disabled[,]" *see id.* at 494, because the enabling statute commanded "that the critical date is not that of the duty-related disability but the date the officer becomes a member of the retirement system—the date he or she was first employed by the City as a police officer." *See id.* at 494–95.

¶ 25. In *Rehrauer*, we followed, as we must, *see Cook*, 208 Wis. 2d at 189–90, our holding in *Welter*, relying on the same enabling statutes relating to municipal pensions.[1] *Rehrauer* considered benefits which were *improved* after hiring, but before retirement or

---

[1] The Laws of 1947, Chapter 441, § 31(1) provided in relevant part that the City was "empowered to amend or alter

disability. *Id.*, 246 Wis. 2d 863, ¶ 2. We concluded, based on the statute and our holding in *Welter*, "that the firefighters gained *vested rights in the highest level of* duty disability *benefits that came to be contractually established during their years of active duty.*" *See Rehrauer*, 246 Wis. 2d 863, ¶ 20 (emphasis added).

¶ 26. The enabling statute applicable to the Milwaukee County Employees Retirement System contains the same commands as those applicable to the City in *Welter* and *Rehrauer*. *See* ¶ 4, *supra.*

¶ 27. Both *Welter* and *Rehrauer* are published decisions that our supreme court declined to review.[2] "[W]hen [the Wisconsin Supreme Court] accepts review of a case, it does so to clarify and develop the law and provide guidance for lower courts." *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶ 49, 326 Wis. 2d 729, 786 N.W.2d 78. Had the court felt a need to clarify or develop the law regarding municipal pensions and collective bargaining agreements, it could have reviewed either *Welter* or *Rehrauer*. "Officially published opinions of the court of appeals shall have statewide precedential effect." Wis. Stat. § 752.41(2); *see also Cook*, 208 Wis. 2d at 186. In addition, "only the supreme court, the highest court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals." *Cook*, 208

the provisions of this act . . . . provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of such amendment or alteration." *See Rehrauer v. City of Milwaukee*, 2001 WI App 151, ¶ 9, 246 Wis. 2d 863, 631 N.W.2d 644 (emphasis omitted).

[2] *See Welter v. City of Milwaukee*, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), *review denied*, 217 Wis. 2d 519; *Rehrauer*, 246 Wis. 2d 863, *review denied*, 290 Wis. 2d 21.

Wis. 2d at 189–90. We have no power to withdraw or modify our holdings. Our supreme court has not over-ruled,[3] modified or withdrawn language from *Welter* or *Rehrauer*.

¶ 28. Our supreme court was aware of our earlier decisions in *Welter* and *Rehrauer* in 2008 when it decided *Loth*. Having earlier declined to review either opinion, the court in *Loth* again not only made no change to either *Welter* or *Rehrauer*, but also did not make any reference to either opinion. Therefore, I must conclude that both *Welter* and *Rehrauer* remain control-ling law for retirement covered by collective bargaining agreements. The case before us must be affirmed.

[3] "[W]hen the supreme court overrules a court of appeals decision, the court of appeals decision no longer possesses any precedential value, unless this court expressly states other-wise." *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶ 42, 326 Wis. 2d 729, 786 N.W.2d 78.