*658 PATIENCE DRAKE ROGGENSACK, J.
¶ 1. We review a published decision of the court of appeals[1] reversing an order of the circuit court[2] that granted summary judgment to the Wisconsin Federation of Nurses and Health Professionals (Wisconsin Federation), the Association of Milwaukee County Attorneys (County Attorneys), Wisconsin Federation member Susan Schwegel, and County Attorneys member Susan Jaskulski. Our review focuses on the interpretation of a Milwaukee County General Ordinance (MCGO), § 17.14(7)(ee)(l) (2011), that prospectively eliminated Medicare Part B premium reimbursement upon retirement for employees who did not retire before retirement dates established by Milwaukee County.
¶ 2. Plaintiffs claim a vested contract right to reimbursement of Medicare Part B premiums upon retirement, even though they have not yet retired.[3] We conclude that Milwaukee County did not abrogate a vested contract right when it prospectively modified a health insurance benefit it offered for employees who had not yet retired. We further conclude that County *659 employees have a vested contract right to Medicare Part B premium reimbursement when they fulfill all three criteria for its payment: (1) reaching retirement age; (2) providing 15 or more years of credited county service; and (3) retiring before the dates established by Milwaukee County. Employees who do not meet all three criteria have not fulfilled the requirements necessary to establish a vested contract right to reimbursement. Therefore, we affirm the decision of the court of appeals that granted summary judgment to Milwaukee County.
I. BACKGROUND[4]
¶ 3. Plaintiffs claim that MCGO § 17.14(7)(ee)(l) (2011) impairs their vested contract right to reimbursement of Medicare Part B premiums when they retire.[5] Accordingly, we must decide whether § 17.14(7)(ee)(l) (2011)'s prospective modification of the County's obligation to reimburse Medicare Part B premiums at retirement for Susan Schwegel, Susan Jaskulski, members of Wisconsin Federation and members of County Attorneys who were of retirement age, had 15 years of credited service to the County, but who did not retire by the dates established in § 17.14(7)(ee)(l) (2011), breached a vested contract right.
¶ 4. Plaintiffs moved for summary judgment enjoining the application of MCGO § 17.14(7)(ee)(l) *660 (2011) and requiring the County to continue to reimburse Medicare Part B premiums for affected plaintiffs when they retire and become Medicare-eligible. The County moved for summary judgment dismissing the plaintiffs' action.
¶ 5. The facts relevant to the parties' cross-motions for summary judgment are not in dispute.[6] In 1937, the legislature instructed counties with populations of 500,000 or more to establish retirement systems for their employees. Ch. 201, Laws of 1937.
¶ 6. Effective January 1, 1938, Milwaukee County created the Milwaukee County Employees Retirement System (MCERS) pursuant to Chapter 201 of the Laws of 1937. Although MCERS was created by the County, it was then controlled by the State. The Laws of 1945 again addressed the State-controlled MCERS. Ch. 138, Laws of 1945. Those laws provided in relevant part:
(2) CONTRACTS TO ASSURE BENEFITS. The benefits of members . . . and of beneficiaries of deceased members . . . shall be assured by benefit contracts as herein provided:
(a). .. [E]ach member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.
¶ 7. Effective January 1, 1955, Milwaukee County first participated in health insurance for its employees. The County did so under Chapter 17 of the Milwaukee County General Ordinances. MCGO *661 § 17.14(8) (1955). In the years following, § 17.14 was amended many, many times. We relate only those amendments that bear on the dispute before us. One such amendment occurred in 1967, when Milwaukee County began providing health insurance for retired employees. § 17.14(7) (1967).
¶ 8. In 1965, the legislature granted home rule authority over MCERS to Milwaukee County. Ch. 405, Laws of 1965.[7] The 1965 shift to home rule empowered Milwaukee County "to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system." Id. at § 2. Chapter 405 of the session laws also provided that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change." Id.
¶ 9. In 1989, the County limited those employees who qualify for continuation of health insurance benefits upon retirement at County expense: "The *662 County shall pay the full monthly cost of providing such coverage for employes who commenced their employment with Milwaukee County prior to July 31, 1989." MCGO § 17.14(7)(a) (1989). The County also limited the continuation of retiree health insurance benefits at County expense through a years-of-service requirement: "[t]he provisions of (a) shall apply to retired members of [MCERS] with 15 or more years of creditable pension service as a County employe." § 17.14(7)(h) (1989). At the time both individual plaintiffs began employment with Milwaukee County, the County's retirement health insurance benefits included Medicare Part B premium reimbursement for those employees who had met the criteria set out in § 17.14(7)(h) (1989).[8]
¶ 10. In 1996, MCGO § 17.14(7)(h) was again amended. The amendment provided: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.91)."[9]
*663 ¶ 11. In 2011, an amendment adding language to MCGO § 17.14(7)(ee)(l) (2010) restricted the applicability of paragraph (ee) that addressed payment of Medicare Part B premiums for retired employees. After the 2011 revision, § 17.14(7)(ee)(l) read:
The provisions of section (ee) shall not apply to members not represented by a collective bargaining unit who retired and began receiving benefits from the Milwaukee County Employees Retirement System after April 1, 2011, nor to members represented by the .. .Association of Milwaukee County Attorneys ... who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2011, nor to members represented by the Federation of Nurses and Health Professionals who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2012.[10]
¶ 12. In summary, after the 2011 amendment to MCGO § 17.14(7)(ee)(l), the Medicare Part B reimbursement modification required that members of County Attorneys had to retire on or before December 31, 2011, and members of Wisconsin Federation had to *664 retire on or before December 31, 2012, in order to secure County reimbursement for Medicare Part B premiums upon retirement.
¶ 13. Both parties moved for summary judgment. The circuit court granted plaintiffs' motion, concluding that qualifying employees have a vested benefit contract requiring Medicare Part B premium reimbursement, and the County's refusal to reimburse premiums upon those employees' retirements would constitute a material breach of their vested rights. The circuit court noted that it relied on Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), and Rehrauer v. City of Milwaukee, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644, which may have conflicted with Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766.
¶ 14. The court of appeals reversed and granted summary judgment to Milwaukee County. Wis. Fed'n of Nurses & Health Prof Is, Local 5001 v. Milwaukee Cnty., 2013 WI App 134, ¶ 16, 351 Wis. 2d 421, 839 N.W.2d 869. The court of appeals reasoned that it was bound by Loth. Id., ¶ 11. The court of appeals agreed with the circuit court "that Loth appears at odds with both Welter . . . and Rehrauer . . ., and that Loth discussed neither decision." Id. The court of appeals, however, declined to "discuss or distinguish either Welter or Rehrauer." Id. Rather, applying Loth, the court of appeals concluded that employees were merely eligible for vested benefits until they had completed all prerequisites, including actually retiring, and that the County was not restricted from modifying Medicare Part B premium reimbursement until employees' eligibility matured into entitlement by employees ful *665 filling all the conditions necessary to receipt of the benefit.[11] Id., ¶ 14.
¶ 15. We granted plaintiffs' petition for review and now affirm the decision of the court of appeals.
II. DISCUSSION
¶ 16. Plaintiffs claim that MCGO § 17.14(7)(ee)(l) (2011), which prospectively modifies the County's obligation to reimburse Medicare Part B premiums upon retirement for plaintiffs who were of retirement age, had 15 years of credited service to the County, but who had not retired by the dates established in § 17.14(7)(ee)(l) (2011), impairs their vested contract right to be reimbursed for Medicare Part B premiums when they retire. This contention requires us to focus on legislative enactments and County ordinances.
A. Standard of Review
¶ 17. Plaintiffs claim their vested contract right arises from their employment by Milwaukee County. They rely on laws that they assert preclude the enactment of MCGO § 17.14(7)(ee)(l) (2011) and on their interpretations of prior ordinances, which they claim Milwaukee County was not free to amend.
¶ 18. The interpretation and application of session laws or statutes present questions of law that we independently review, while benefitting from previous *666 court discussions. Spiegelberg v. State, 2006 WI 75, ¶ 8, 291 Wis. 2d 601, 717 N.W.2d 641. Likewise, construction of an ordinance under undisputed facts is a question of law for our independent review. Browndale Int 'l, Ltd. v. Bd. of Adjustment for Dane Cnty., 60 Wis. 2d 182, 200, 208 N.W.2d 121 (1973).
¶ 19. The court of appeals granted summary judgment to Milwaukee County. When we review summary judgment, we independently apply the same methodology as the court of appeals and the circuit court, benefitting from their discussions. Loth, 315 Wis. 2d 35, ¶ 9; Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581.
¶ 20. We begin with the complaint to determine whether it arguably states a claim; if it does, we then review the answer to see whether issues of material fact or law have been joined. Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶ 16, 291 Wis. 2d 283, 717 N.W.2d 17. If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to support the motion and the affidavits that oppose the motion. Id. Summary judgment is appropriate when there are no genuine disputes of material fact. Admanco, Inc. v. 700 Stanton Drive, LLC, 2010 WI 76, ¶ 28, 326 Wis. 2d 586, 786 N.W.2d 759. The parties do not dispute material facts giving rise to plaintiffs' claims.[12]
*667 B. Contractual Rights
¶ 21. Plaintiffs claim MCGO § 17.14(7)(ee)(l) (2011) abrogated a vested contractual right. Section 17.14(7)(dd) and (ee)(l) (2011) are relevant to plaintiffs' claims. They provide:
(dd) The county shall pay the full monthly cost of providing such coverage to retired members of the county retirement system with fifteen (15) or more years of creditable pension service as a county employe—
(ee) Retired members of the county retirement system who are eligible for continuing their health insurance benefits at county expense under the provision of this section shall be eligible for reimbursement of the cost of their Medicare Part B premiums, as well as the Medicare Part B premiums of their eligible spouse and dependents.
(1) The provisions of section (ee) shall not apply to members not represented by a collective bargaining unit who retired and began receiving benefits from the [MCERS] after April 1, 2011, nor to members represented by . . . the Association of Milwaukee County Attorneys . . . who retired and began receiving benefits from [MCERS] after December 31, 2011, nor to members represented by the Federation of Nurses and Health Professionals who retired and began receiving benefits from [MCERS] after December 31, 2012.
The question we must decide is whether earlier versions of § 17.14(7), in combination with certain session laws or statutes, vested a contractual right to reimbursement of Medicare Part B premiums at retirement *668 such that the County was not free to modify it prospectively for employees who had not yet retired.[13]
¶ 22. Plaintiffs rely on laws and ordinances that apply to MCERS; we consider them as well. We apply rules of statutory interpretation to the interpretation of ordinances. Harris v. City ofCedarburg, 176 Wis. 2d 14, 32, 498 N.W.2d 842 (1993). "[T]he purpose of statutory [and ordinance] interpretation is to determine what the statute [or ordinance] means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, f 44, 271 Wis. 2d 633, 681 N.W.2d 110. If a statute's [or ordinance's] meaning is plain, "we ordinarily stop the inquiry." Id., ¶ 45 (quoting Seider v. O'Connell, 2007 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory [and ordinance] language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.
¶ 23. Plaintiffs contend that their vested contract right arises in MCGO § 17.14(7)(h) (1996) that provides: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.[10])." Plaintiffs *669 refer to MCGO Chapter 201, which contains MCERS, to employ earlier statutory language that applies to pension and death benefits addressed in MCGO Chapter 201, which they now contend applies to health insurance. Plaintiffs attempt to engraft the MCGO pension and death benefit restrictions onto § 17.14(7) (1996) to prevent the County from prospectively modifying health insurance benefits contained in § 17.14(7) (1996).
¶ 24. An understanding of the history underlying both MCERS and County paid health insurance is helpful in resolving the claim plaintiffs propose. In that regard, we note that Chapter 201 of the Laws of 1937 is the starting point from which MCERS was developed. It provided for the establishment of pension and death benefits for county employees in counties with populations of 500,000 or more:
Retirement System in Populous Counties; Definitions. In each county having a population of five hundred thousand or more a retirement system shall be established and maintained for the payment of benefits to the employes of such county and to the widows and children of such employes, except employes who are contributory to, participants in, or beneficiaries of a pension fund in operation in the state, or any municipal subdivision thereof. The funds of the retirement system shall be derived, administered and disbursed in accordance with the provisions of this act.
§ 1, ch. 201, Laws of 1937. In 1938, in accord with the Laws of 1937, Chapter 201, Milwaukee County created MCERS, which was then controlled by the State.
¶ 25. Laws promulgated in 1945, specifically Chapter 138 of the Laws of 1945, again addressed the *670 State-controlled MCERS. Chapter 138 described retirement annuities and death benefits as being "benefit contracts." Those laws provided in relevant part:
(2) CONTRACTS TO ASSURE BENEFITS. The benefits of members .. . and of beneficiaries of deceased members . . . shall be assured by benefit contracts as herein provided:
(a).. . [E]ach member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.
Ch. 138, Laws of 1945.
¶ 26. Plaintiffs rely heavily on the legislative statement that in MCERS, members "shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent." Their reliance is misplaced because the quoted legislative language of Chapter 138, Laws of 1945 set forth above referred solely to pension and death benefits. The cited legislative language could not have referred to health insurance because in 1945 Milwaukee County did not pay health insurance for its employees or for its retired employees. Therefore, the "vested right" referred to by the legislature in (2)(a) above and relied on by plaintiffs referred only to pension and death benefits, which Milwaukee County then set out in Chapter 201 (1945).
*671 ¶ 27. In Chapter 405 of the Laws of 1965, the legislature granted Milwaukee County specific home rule authority over MCERS. It provided in relevant part:
(2). .. Each county... is hereby empowered, by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change.
§ 2, ch. 405, Laws of 1965.
f 28. Plaintiffs rely on the restrictive legislative language, "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change." Id. They contend that although the home rule statute granted Milwaukee County authority to change benefits, Milwaukee County could not eliminate or reduce benefits subsequent to an employee's membership in MCERS because of the 1965 legislative restriction.
¶ 29. However, at the time of the home rule delegation, MCERS had nothing to do with health insurance. MCERS was contained solely within MCGO Chapter 201. The 1967 MCGO that set out Milwaukee County's rights and responsibilities under home rule powers of MCERS contains not one word about health insurance. MCGO ch. 201 (1967). Therefore, the statutory admonishment that plaintiffs contend prevented Milwaukee County from changing its employee health insurance actually had no application to health insur *672 anee. Stated otherwise, the home rule statute does not support plaintiffs' contention that the County violated a vested contract right when reimbursement of Medicare Part B premiums for retired employees was prospectively eliminated. Backing up just a bit in our chronologic consideration of ordinances will help further to explain why that is so.
¶ 30. Effective January 1, 1955, Milwaukee County first began to provide health insurance to employees. MCGO § 17.14(8) (1955). The provision of health insurance was not part of MCERS, which was enacted in 1938. In 1955, MCERS was still controlled by the State. However, Milwaukee County health insurance was an independent action by the County, not one controlled by the State, and it did not apply to retired employees as MCERS did. Stated otherwise, County health insurance was on a totally separate and independent track from MCERS. Health insurance was provided in MCGO Chapter 17, the "Classification and Salary Standardization Ordinance," not through the "Milwaukee County Employees Retirement System" ordinance, MCGO Chapter 201.
¶ 31. Furthermore, as is apparent from the dates, in 1955, Milwaukee County independently began providing health insurance to its employees before the State granted Milwaukee County home rule powers over MCERS in 1965. In addition, as the County points out in its brief, the home rule amendment was "passed years before the County had any retiree health insurance program."
¶ 32. The County's assertion is correct because it was not until 1967 that Milwaukee County first began including retired employees in its health insurance program. MCGO § 17.14(7) (1967). Milwaukee County *673 explained that its 1967 ordinance was, "To repeal and recreate section 17.14(7) of the General Ordinances of Milwaukee County, as amended. . . relating to the Blue Cross-Medicare Programs so as to make such programs fully paid for both employes and persons on the retirement rolls."
¶ 33. Once again, the County's provision of health insurance was not part of MCERS, which was set out in MCGO Chapter 201. Health insurance, controlled by the County, was on a separate and independent track from pension and death benefits addressed in MCERS. Stated otherwise, the State never controlled health insurance as it once controlled the pension and death benefits found in MCGO Chapter 201; therefore, the home rule amendment had no effect on whether the County could alter the terms under which it would reimburse working employees for Medicare Part B premiums when they retire.
¶ 34. Terms on which Milwaukee County has provided health insurance to its employees and retired employees have been modified many, many times since 1967.[14] As we earlier mentioned, plaintiffs rely heavily on the 1996 amendment to MCGO § 17.14(7)(h). We now consider that amendment.
¶ 35. The 1996 amendment to MCGO § 17.14(7)(h) provides: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.[10])." MCGO § 201.24(5.10) (1996) provides:
Members who retire with sufficient pension service credit as noted in chapter 17 of the Code, or the *674 appropriate labor agreement, shall be provided with paid health insurance as noted in chapter 17 of the Code, however such benefit shall not be funded via the pension fund.
¶ 36. We are unpersuaded that MCGO § 17.14(7)(h) (1996) accords plaintiffs a vested contract right requiring Milwaukee County to pay Medicare Part B premiums upon plaintiffs' retirement for a number of reasons.
| 37. First, although MCGO § 201.24(5.10) is part of MCERS, it does not cause health insurance to become part of MCERS as pension and death benefits are. Rather, § 201.24(5.10) confirms and maintains the separate tracks of MCERS and health insurance that they have always had. Section 201.24(5.10) plainly states that health insurance is controlled by MCGO Chapter 17. It explains that health insurance is "as noted in chapter 17 of the Code." Section 201.24(5.10) does not provide that health insurance comes within the restrictions of MCERS, but rather it comes within the restrictions of "chapter 17 of the Code." In addition, § 201.24(5.10) affirms that Milwaukee County's funding of health insurance will not be an obligation of the MCERS pension fund, again separating the provision of health insurance from pension and death benefits accorded in MCERS.
¶ 38. Second, prior to amending MCGO § 17.14(7)(h) in 1996, the director of human resources for Milwaukee County summarized the proposed ordinance revisions in a memorandum provided to members of the personnel committee. The summary explained that the "revisions related to the provision of health insurance after retirement to retirees with 15 or more years of pension service credit is being proposed *675 only to clarify the fact that the benefit is a vested benefit." (Emphasis added). Stated otherwise, the revision's reference to "an employee's vested benefit contract" related only to retired employees, because once employees retired with the requisite years of pension service credit, health insurance was a vested benefit for them.
¶ 39. Third, the County unilaterally offered to continue to reimburse retired employees for Medicare Part B premiums after they retire if they: (1) reached retirement age; (2) provided 15 or more years of credited county service; and (3) retired before the dates established by Milwaukee County in its offer. The plaintiffs did not convert this offer into a bilateral contract by accepting the County's terms.
¶ 40. To explain: When one party makes a promise to provide a benefit and only that party is subject to a legal obligation arising from the promise, no bilateral contract is made. Paulson v. Olson Implement Co., 107 Wis. 2d 510, 517 n.6, 319 N.W.2d 855 (1982). A bilateral contract arises when the promisee accepts the offer by performing the acts requested by the promisor. Cf. Loth, 315 Wis. 2d 35, ¶ 28.
¶ 41. As we have explained, "the terms of an employer's unilateral offer are important in determining how an employee may accept the offer and give rise to a binding contract." Id,., ¶ 31. Stated otherwise, upon an employer's conditional promise of a benefit, an employee becomes eligible for the benefit. The eligibility for the benefit vests as a contract right when the employee meets all the conditions the employer established to confer the benefit. Id., ¶ 47.
*676 ¶ 42. Plaintiffs had an opportunity to receive Medicare Part B reimbursement upon retirement, but they chose not to avail themselves of that opportunity. In this regard, we concur with the conclusion of the court of appeals that plaintiffs were required to take three steps in order to secure the opportunity of MCGO § 17.14(7)(dd): (1) reach retirement age; (2) provide 15 or more years of credited county service; and (3) retire before the dates established by Milwaukee County. Simply stated, plaintiffs were eligible for the benefit they seek; however, they chose not to satisfy the necessary conditions to cause the opportunity Milwaukee County provided to ripen into a vested contract right during the period of time the opportunity was available.
¶ 43. Our conclusion in this regard is consistent with our opinion in Loth, wherein we held that in order to receive the health insurance Loth sought, he had to reach retirement age, provide 15 years or more of credited City service, and retire. Id., ¶ 6.
¶ 44. Fourth, County payment for health insurance premiums is not defined in a fixed way such that a County payment is tied to a specified benefit that always will follow. For example, an employee could not understand that the dollar amount of County-paid premiums will accord the same benefits to employees, or retired employees, year after year. Rather, by their nature, health insurance benefits have always been fluid opportunities available for a limited period of time, which an employee may realize if he or she takes all actions necessary to convert the opportunity into an entitlement during the period in which it is available. Id. (explaining that Loth had to meet the conditions necessary to obtaining the health in *677 surance plan he sought before the plan was amended). Accordingly, health insurance benefits and the premiums necessary to achieve them can be changed prospectively, as they have many, many times through the health insurance that Milwaukee County has offered to both employees and retirees since 1967.
f 45. Fifth, County health insurance payments are not earned in increments as employees continue their employment. Rather, the insurance provides opportunities that the County makes available for limited periods of time. Id.
¶ 46. Plaintiffs have attempted to distinguish Loth by arguing that entitlement to retiree reimbursement for Medicare Part B premiums vests immediately upon commencing employment in three primary ways: (1) applicability of session laws; (2) characterizing health insurance as a vested contract right that the County is not free to abrogate; and (3) offering alternative theories found in Rehrauer and Welter. We have addressed the effect of the session laws and the nature of the contractual opportunity for reimbursement of Medicare Part B premiums for retirees in regard to plaintiffs' claim. We now take up plaintiffs' remaining argument.
C. Welter and Rehrauer
¶ 47. Plaintiffs argue that instead of Loth, Welter and Rehrauer control. The court of appeals declined to discuss or distinguish these cases, except to agree with the circuit court "that Loth appears at odds with both Welter . . . and Rehrauer, and that Loth discussed neither decision." Wis. Fed'n, 351 Wis. 2d 421, ¶ 11. *678 Welter reasoned that statutory provisions that created duty disability pension rights for police officers vested those pension rights immediately upon an employee's membership in the City of Milwaukee's retirement system. Welter, 214 Wis. 2d at 488. Rehrauer concluded that the firefighters acquired vested duty disability pension rights that were contractually established during the course of their employment. Rehrauer, 246 Wis. 2d 863, ¶ 1.
¶ 48. In Welter, police officers eligible for duty disability pensions claimed that the applicable service retirement allowance conversion age was the age that was in effect when they began employment. Welter, 214 Wis. 2d at 488. They argued that application of a lower conversion age, enacted by municipal ordinance after the officers began employment, was a breach of the vested contract right to the higher conversion age. Id. at 488. The court of appeals rejected the City's argument that an officer's right to a disability pension does not vest until he or she becomes disabled and agreed with the police officers. Id. at 494-95.
¶ 49. In Rehrauer, a contract in effect from 1972 to 1977 established lifetime duty disability pensions, allowing firefighters to avoid an eventual conversion to the lesser service retirement allowance. Rehrauer, 246 Wis. 2d 863, ¶¶ 2, 3 n.3. After that period, duty disability pensions were again converted to service retirement allowances. Id., ¶ 3 n.3. Firefighters hired before the 1972 contract period and beginning receipt of duty disability pension after 1977 claimed vested rights in the lifetime duty disability pension, which was the highest level of pension benefits contractually established at any time during the course of plaintiffs' *679 active duty. Id., ¶¶ 2, 3 n.3, 5, 7. The court of appeals held the firefighters gained "vested rights in subsequently-negotiated benefits, at the highest level contractually established at any time during the course of active duty." Id., ¶ 11.
¶ 50. Before us, plaintiffs characterize Welter and Rehrauer as directly supporting the immediate vesting of rights to health insurance terms and conditions upon hiring, asserting that they involved bilateral contracts founded on statutory language substantially identical to chs. 138 and 405 that plaintiffs claim is applicable here. Although we could draw many distinctions between plaintiffs' claims and those presented in Welter and Rehrauer, it is sufficient to say, as the County has argued, that both Welter and Rehrauer are pension cases, rather than health insurance cases and the rights asserted in Welter and Rehrauer arose from the City of Milwaukee's pension plan, not a Milwaukee County health insurance plan. Stated otherwise, neither Welter nor Rehrauer involves health insurance, the nature of which as we have explained, is a fluid opportunity for a limited period of time.
¶ 51. Health insurance, found in MCGO § 17.14 is on a separate and independent track from pension rights established in MCERS. As we have detailed above, the laws relied on by plaintiffs that arguably could be applicable to MCERS do not apply to or affect Milwaukee County's provision of health insurance.
III. CONCLUSION
¶ 52. We conclude that Milwaukee County did not abrogate a vested contract right when it prospec *680 tively modified a health insurance benefit it offered for employees who had not yet retired. We further conclude that County employees have a vested contract right to Medicare Part B premium reimbursement when they fulfill all three criteria for its payment: (1) reaching retirement age; (2) providing 15 or more years of credited county service; and (3) retiring before the dates established by Milwaukee County. Employees who did not meet all three criteria have not fulfilled the requirements necessary to establish a vested contract right to reimbursement. Therefore, we affirm the decision of the court of appeals that granted summary judgment to Milwaukee County.
By the Court. — The decision of the court of appeals is affirmed and the cause remanded to the circuit court to dismiss the complaint.

 Wis. Fed'n of Nurses & Health Prof Is, Local 5001 v. Milwaukee Cnty., 2013 WI App 134, 351 Wis. 2d 421, 839 N.W.2d 869.

 The Honorable Christopher R. Foley of Milwaukee County presided.

 In their complaint, plaintiffs claim that MCGO § 17.14(7)(ee)(l) (2011) is unconstitutional as applied to them because it impairs a vested contract right, contrary to Article I, Section 12 of the Wisconsin Constitution, and is a deprivation of property without just compensation, contrary to Article I, Section 13 of the Wisconsin Constitution. However, before us, plaintiffs contend they have a vested contract right, without continuing that contention in the context of a constitutional claim. Therefore, we too limit our discussion to whether plaintiffs have a vested contract right to reimbursement of Medicare Part B premiums when they retire.

 The parties entered into a Stipulation of Facts for purposes of summary judgment. Facts employed herein were taken from that stipulation.

 A vested contractual right is one that cannot be abrogated without breaching the contract from which it arises. See Society Ins. v. LIRC, 2010 WI 68, ¶ 69, 326 Wis. 2d 444, 786 N.W.2d 385.

 See note 4 above.

 Section 2 of Chapter 405, Laws of 1965, provides:
For the purpose of best protecting the employes subject to this act by granting supervisory authority over each retirement system created hereunder to the governmental unit most involved therewith, it is declared to be the legislative policy that the future operation of each such retirement system is a matter of local affair and government and shall not be construed to be a matter of state-wide concern. Each county which is required to establish and maintain a retirement system pursuant to this act is hereby empowered, by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change.

 Susan Jaskulski began County employment on June 15, 1989. Susan Schwegel began County employment March 19, 1990. Although MCGO § 17.14(7)(h) (1989) internally references a date limitation for continuation of health insurance at County expense, by 2011, this start-of-employment limitation was no longer present in Chapter 17. Instead, in 2011, § 17.14(7)(dd) (2010), provided the conditions required for continuation of health insurance benefits at County expense.

 Plaintiffs note the reference to "201.24(5.91)" appears to have been a drafting error and should have been "201.24(5.10)." The County does not dispute plaintiffs' contention; accordingly, hereinafter, we refer to § 201.24(5.10), rather than § 201.24(5.91).
MCGO § 201.24(5.10) (1996), provided: "Members who retire with sufficient pension service credit as noted in chapter 17 of the Code, or the appropriate labor agreement, shall be *663 provided with paid health insurance as noted in chapter 17 of the Code, however such benefit shall not be funded via the pension fund."

 Wisconsin Federation and the County were parties to a collective bargaining agreement covering Wisconsin Federation's wages, hours, and conditions of employment, including coverage under the County's group health insurance program. The Wisconsin Federation-County collective bargaining agreement expired December 31, 2012. County Attorneys and the County were parties to a collective bargaining agreement covering County Attorneys' wages, hours, and conditions of employment, including coverage under the County's group health insurance program. The County Attorneys-County collective bargaining agreement expired December 31, 2011.

 The court of appeals did note "It is true, of course, that once eligibility matures into entitlement, a benefit may not be retroactively modified or eliminated." Wis. Fed'n, 351 Wis. 2d 421, ¶ 14. The County does not dispute the court of appeals' conclusion.

 See note 4 above.

 Although plaintiffs do not allege abrogation of their rights because of other modifications of health insurance under MCGO § 17.14(7), we note that in 2010, (7)(d) increased the amount of employees' part-payment of premiums; (7)(n) increased employees' deductibles; (7)(o) increased employees' co-pays for office visits; (7)(q) increased employees' out-of-pocket payments; and (7)(r)-(u) increased employees' co-pays for many other services such as visits to the emergency room.

 See, e.g., note 13.