COURT OF APPEALS
DECISION
DATED AND FILED

June 25, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP455**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV52

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN EX REL. JERRY T. SYNKELMA,

PETITIONER-APPELLANT,

V.

VILAS COUNTY BOARD OF ADJUSTMENT,

RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Vilas County: DANIEL L. OVERBEY, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jerry T. Synkelma appeals from an order of the circuit court denying his request for certiorari relief from a Vilas County Board of

Adjustment (the Board) decision. The Board denied Synkelma's after-the-fact request for an area variance for a patio and retaining walls he built on his property within thirty-five feet of the Ordinary High Water Mark (OHWM) of the Manitowish River, in violation of the Vilas County Shoreland Zoning Ordinance (the Ordinance). Because we conclude the Board did not err by denying the variance, we affirm the circuit court's order upholding the Board's decision.

## BACKGROUND

¶2      Synkelma owns real property along the Manitowish River in Manitowish Waters, Wisconsin. The property features a steep slope from the residence down to the river. Within this area, Synkelma removed five trees to establish "an access and viewing corridor," *see* WIS. STAT. § 59.692(1f)(b) (2021-22);[1] VILAS COUNTY, WIS., SHORELAND ZONING ORDINANCE § 8.3.E. (Feb. 1, 2017),[2] and because he "believed the trees he removed posed a danger to his house and property."

¶3      Synkelma installed the patio and the retaining walls[3] after the trees were cut down. According to Synkelma, "[t]he stumps and root systems on three

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] All references to the Ordinance in this decision are to the February 1, 2017 amendment.

"Access and Viewing Corridor" is defined as "[a] strip of vegetated land that allows safe pedestrian access to the shore through the vegetative buffer zone." ORDINANCE § 3.2.1. The "vegetative buffer zone" is the "[l]and extending from the [OHWM] to 35 feet inland." ORDINANCE § 8.3.C.1. The "Ordinary High Water Mark (OHWM)" is "[t]he point on the bank or shore up to which the presence and action of surface water is so continuous as to leave a distinctive mark such as by erosion, destruction, or prevention of terrestrial vegetation, predominance of aquatic vegetation, or other easily recognized characteristic." ORDINANCE § 3.2.34.

[3] From time to time, we will refer to the patio and the retaining walls as "the project."

2

of the trees near the shoreline were left intact," but "[t]he stumps of the two remaining trees, which were in the area where [the] patio now sits, were removed." The area of the patio closest to the river is supported by a large rock retaining wall, and the area closest to the residence features a four-foot block retaining wall. It is undisputed that Synkelma did not apply for any permits for the project prior to construction. It is also undisputed that at least a portion of the project is located within thirty-five feet of the OHWM of the Manitowish River.

¶4      On August 28, 2020, the Vilas County Deputy Zoning Administrator, James Janet, issued a violation notice to Synkelma. As relevant here, Synkelma was notified that: he failed to obtain the proper permits; his project was within the seventy-five-foot setback from the OHWM required for all new nonexempt structures; he failed to preserve natural shrubbery, trees, and undergrowth and improperly clear cut trees; and he was responsible for "land disturbance activities within 300 [feet] of the OHWM" without shoreland alteration permits. Synkelma was ordered to "abate the violations and bring the property into compliance with the requirements of the Ordinance" by, among other things, applying for an after-the-fact shoreland alteration permit and erosion control plan and removing the "patio/sitting area, the retaining walls and the rock and boulders placed closer than 75 [feet] to the OHWM."

¶5      Synkelma applied for after-the-fact zoning and shoreland alteration permits on October 13, 2020, and his application was denied by a letter from Janet on October 16, 2020. According to Janet's letter, Synkelma's application was denied because, under the Ordinance, "[r]etaining walls are not exempt structures and cannot be authorized within 75 feet of the OHWM"; "[n]o land disturbance is allowed within 35 [feet] of the OHWM except as specifically authorized by Wisconsin Statutes"; "[t]he Zoning Administrator or designee shall grant special

zoning permission for the construction and/or placement of a structure located 35 [feet] or greater from the OHWM," which did not occur here; and the "Wisconsin Statutes require[] preservation or restoration of a vegetated buffer zone that covers at least 70% of the half of the shoreland setback area that is nearest to the water." Janet's letter advised Synkelma that he had thirty days to appeal his decision to the Board.

¶6     On November 9, 2020, Synkelma filed an application with the Board, seeking an area variance to allow his retaining walls and patio to remain in place. On April 30, 2021, the Board held a public, evidentiary hearing and conducted a site visit to Synkelma's property.

¶7     At the hearing, Janet testified about why Synkelma was denied the after-the-fact permits.[4] He explained that the main issue was that Synkelma's patio and part of the retaining walls were within thirty-five feet of the OHWM. Additionally, Janet testified that "part of … my denial [was], even if [Synkelma] was 35 feet back with his patio, I still couldn't grant that [permit] because he doesn't have enough natural vegetation in the setback area, the first 35 feet." Janet further noted that land disturbance is not authorized within thirty-five feet of the OHWM. At the end of the hearing's public portion, Janet made it clear that if the Board did not grant Synkelma's variance application, Synkelma would be required to remove the retaining walls and patio.

¶8     Next, the Board read into the record a letter from the Wisconsin Department of Natural Resources (DNR). The DNR's letter contained

---

[4] Janet also explained that he was originally called to Synkelma's property due to complaints regarding tree cutting.

"comments" on Synkelma's variance application by outlining "the statutory requirements for the granting of the variance for each variance request" and explaining that "[t]he standards help to ensure protection of the public interest, including the preservation of water quality and fish and wildlife habitat along lakes and rivers." According to the DNR, "[i]n this case, the land disturbance, the retaining walls, and the patio have already been built without consultation with county zoning or permits, so this is a self-created hardship."

¶9 The Board then read other documents into the record. The first was an email from Synkelma's next-door neighbors, calling the patio "an improvement to this property [that] does not cause any harm to our property or its value" and stating that "we have no concern with the Board approving a variance." The second was a comment letter from Synkelma's "landscape architect" who designed the project. According to the landscape architect,

> My understanding is the patio/sitting area was a result of a need to prevent any further erosion problems resulting from the necessary removal of several large dead and severely leaning trees within the 75-foot setback zone. The leaning trees were leaning toward the house, presenting a danger, not only to the building, but also to the potential of creating an erosion problem if the trees uprooted during a high wind weather event from the west to the northwest.

> While protecting the environment by … preventing potential shoreline erosion, it became apparent an opportunity to provide a sitting area could be included in a terracing opportunity to include a small patio area for elderly visitors, who have difficulty accessing the river by the long run of stairs to the dock.

The landscape architect also emphasized that the patio and retaining walls "can hardly be viewed from the river by boaters or the cabin users across the river from the property" based on the property's steep slope; thus, "the patio has little or no [e]ffect on the existing characteristic landscape of the river corridor."

¶10      The third and final document was an email from another neighbor who strongly opposed Synkelma's variance request.   The neighbor rebuked Synkelma for having a "complete disregard" for the requirement to have "permits, approvals, et cetera completed before work starts."   The neighbor also accused Synkelma of "clearcut[ting] over 200 trees … both on the shoreline and his lot." He also expressed appreciation for the Board's "efforts in keeping control of our shoreline on the Manitowish Waters chain of lakes" and worried that if the Board approved Synkelma's variance application, "the next guy with a pocket full of cash will say, just do it and pay the fine, no big deal."

¶11      Synkelma's counsel then made a statement, addressing the factors that the Board was to consider in determining whether to grant the variance and expressed his understanding of the Ordinance and the Wisconsin Statutes as it pertained to this case.   According to Synkelma's counsel, the project was "built with erosion control in mind."   Synkelma also testified briefly, explaining that he was planning to plant additional natural vegetation on the steep slope down to the river, "but prior to this, nothing was growing there.  It's nothing but pine needles. Nothing will grow."

¶12      Finally, four community members testified in opposition to the variance request.   The basis for their objections was the tree cutting and the after-the-fact variance request, addressing in particular the public interest and the cumulative impact of similar projects.

¶13      The Board then went into closed session to discuss the variance request.   The Board determined that any hardship suffered by Synkelma was self-imposed as a result of removing the trees and disturbing the land.  As to the property's unique physical limitations, the Board determined that the property was

not unique because the properties on either side of Synkelma's property along the entire shoreline had the same steep slope down to the river. Finally, the Board addressed the harm to the public interest and concluded that removing trees and planting grass had harmed the public interest by taking away the area's "[s]cenic beauty" and had "definitely impacted water quality." The Board voted unanimously to deny Synkelma's variance request.

¶14 Synkelma filed a petition for certiorari review of the Board's decision. The circuit court ordered briefing and held a nonevidentiary hearing on the petition. After hearing the parties' arguments, the court concluded that the Board proceeded under the correct theory of law, that Synkelma's right to disturb the land to establish an access and viewing corridor did not include the right to construct retaining walls or a patio in the viewing corridor, and that the Board's decision to deny Synkelma's area variance was not "arbitrary and capricious" and was supported by the evidence. The court entered an order denying Synkelma's request to overturn the Board's decision. Synkelma appeals.[5]

## DISCUSSION

¶15 Pursuant to WIS. STAT. § 59.694(7)(c), local boards of adjustment have discretion to grant variances "where … a literal enforcement of the provisions of the ordinance will result in unnecessary hardship."

---

[5] We note that the Board has failed to comply with our Rules of Appellate Procedure. Throughout its brief, the Board's references to facts in the record cite only to its appendix. A party must include appropriate references to the record in its briefing. WIS. STAT. RULE 809.19(1)(d)-(e). The appendix is not the record. *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. As a high-volume appellate court, we expect briefing by an attorney to follow the basic Rules of Appellate Procedure. We caution the Board's counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

Sec. 59.694(7)(c)2.; *see also **State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment***, 2004 WI 23, ¶¶18-19, 269 Wis. 2d 549, 676 N.W.2d 401. According to our supreme court, the standard for unnecessary hardship is "whether compliance with the strict letter of the restrictions governing area, setbacks, frontage, height, bulk, or density, would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome." ***Ziervogel***, 269 Wis. 2d 549, ¶24 (quoting ***Snyder v. Waukesha Cnty. Zoning Bd. of Adjustment***, 74 Wis. 2d 468, 474-75, 247 N.W.2d 98 (1976)); *see also* § 59.694(7)(c)3.; ORDINANCE § 3.2.50. The board's inquiry should focus on "the circumstances of each individual case" to ascertain "whether a hardship unique to the property has been demonstrated and whether the relief requested is consistent with the public interest such that the variance should be granted, or whether a variance would subvert the purpose of the zoning restriction to such an extent that it must be denied." ***Ziervogel***, 269 Wis. 2d 549, ¶¶33-34. The hardship cannot be self-created. ***Id.***, ¶20. "The burden of proving unnecessary hardship [is] on the property owner." ***Id.***, ¶¶7, 33.

¶16      Certiorari review of a county board of adjustment's decision to grant or deny a zoning variance application is limited to:

> (1) whether the board kept within its jurisdiction;
> (2) whether it proceeded on a correct theory of law;
> (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence.

***Id.***, ¶14. As a general rule, in certiorari proceedings we review the board's decision, not the circuit court's decision. *See **AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm.***, 2017 WI 52, ¶9, 375 Wis. 2d 329, 895 N.W.2d 368. "A court on certiorari review must accord a presumption of correctness and

validity to a board of adjustment's decision." *Ziervogel*, 269 Wis. 2d 549, ¶13. "Thus, the findings of the board may not be disturbed if any reasonable view of the evidence sustains them." *Snyder*, 74 Wis. 2d at 476.

¶17 The issue in this case also involves the interpretation of an ordinance, which is a question of law we review de novo. *Schwegel v. Milwaukee County*, 2015 WI 12, ¶18, 360 Wis. 2d 654, 859 N.W.2d 78. In interpreting municipal ordinances, we apply the same principles we use for statutory interpretation. *Stoker v. Milwaukee County*, 2014 WI 130, ¶17, 359 Wis. 2d 347, 857 N.W.2d 102. "[S]tatutory interpretation 'begins with the language of the statute.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning," and we interpret the language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶¶45-46.

¶18 Here, Synkelma challenges the Board's decision under three prongs of the certiorari analysis. He asserts that we should reverse on the grounds that the Board's decision "infringes upon [Synkelma's] right to establish and maintain an access and viewing corridor[] and was based on errors of law"; was arbitrary, oppressive, and unreasonable and represented its will and not its judgment; and was not supported by the evidence. He does not argue that the Board did not keep within its jurisdiction. We address and reject each of Synkelma's challenges below.

*I. The Board's Decision Was Based on a Correct Theory of Law*

¶19    Synkelma first argues that the Board proceeded under "the erroneous assumption that a property owner's right to establish an access and viewing corridor does not permit the disturbance of land within 35 feet of the OHWM." According to Synkelma, "[n]either the Wisconsin [S]tatutes nor the Vilas County Zoning Ordinance prohibits removal of stumps in the creation of an access and viewing corridor," and "[r]emoving trees and stumps on steep shoreline slopes can cause erosion." Thus, he asserts,

> [i]f retaining walls are not allowed as part of the creation of an access and viewing corridor on steep slopes, property owners like Synkelma who are affected by this unique physical limitation are effectively denied their statutory right to create and maintain an access and viewing corridor within the vegetative buffer zone.

¶20    The Board disagreed with Synkelma's basic premise that he had the authority under the Ordinance to select cut[6] trees *and remove the tree stumps* within thirty-five feet of the OHWM. Preliminarily, the Board does not dispute, and we agree, that Synkelma had the right to select cut trees within thirty-five feet of the OHWM to create an access and viewing corridor. *See* ORDINANCE § 8.3.C.2. (providing that "removal of trees, shrubs or undergrowth is permitted within the vegetative buffer zone" for "[c]reation of a shoreline recreational area, (viewing corridor)"); ORDINANCE § 3.2.46. (defining "Shoreline Recreational

---

[6] ORDINANCE § 3.2.41. defines "Select Cutting" as

> [t]imber harvest which leaves a minimum of 60 square feet of basal area per acre in trees five inches' diameter at breast height (DBH) and larger, evenly distributed. Trees smaller than 5" in diameter shall be preserved to maintain underbrush growth and to protect the quality of the shoreland buffer area.

Area"); WIS. ADMIN. CODE § NR 115.05(1)(c)2.b. (Jan. 2017)[7] ("The county may allow removal of trees and shrubs in the vegetative buffer zone to create access and viewing corridors ….").

¶21   Synkelma has not, however, identified any language in the Ordinance—or elsewhere in our statutes or administrative code—that *specifically* allows him to also remove the tree stumps to create an access and viewing corridor.  *See* **Roberts v. Manitowoc Cnty. Bd. of Adjustment**, 2006 WI App 169, ¶16, 295 Wis. 2d 522, 721 N.W.2d 499 ("It is not the Board's duty to convince us that its interpretation of its own ordinance is correct, but rather it is [Synkelma's] duty to convince us that the Board's interpretation is incorrect.").  Synkelma has not convinced us that the Board's interpretation of the Ordinance is incorrect; therefore, we do not agree that the Board's decision was based on an error of law.

¶22   On appeal, the Board identifies several provisions which it claims either prohibit or do not provide for the removal of tree stumps in the creation of an access and viewing corridor.  For example, § 9.1.B. of the Ordinance states: "No land disturbance is allowed within 35 feet of the OHWM except as specifically authorized by Wisconsin Statutes."  ORDINANCE § 9.1.B.  Land disturbance activities are defined as

> [c]onstruction, grading, filling, excavating or any other activities which result in the temporary or permanent removal of vegetative cover, increased potential for soil erosion, increased stormwater runoff volumes or velocities, or increased total area of impervious surfaces; or activities which include but are not limited to construction on steep slopes, development of private boat landings or access roads to the water body, development of paths to the shoreline requiring disturbance of the land.

---

[7]  All references to WIS. ADMIN. CODE ch. NR 115 are to the January 2017 register.

ORDINANCE § 3.2.28.[8]  Thus, the Board states that the Ordinance prohibits disturbing the land to excavate tree stumps within thirty-five feet of the OHWM.

¶23     Further, § 8.3.E. of the Ordinance, addressing creating the viewing corridor, specifically references "[s]elect *cutting* of trees and shrubbery" as the means by which an access and viewing corridor can be created, but the Ordinance does not mention tree stump removal.  ORDINANCE § 8.3.E. (emphasis added); *see also* ORDINANCE § 3.2.46. (defining the "Shoreline Recreational Area" as "[a]n area paralleling the shoreline where trees, shrubbery, or undergrowth have been *selectively cut* to provide an access and viewing corridor and to provide for recreation" (emphasis added)); ORDINANCE § 3.2.41. (defining "Select Cutting").

¶24     Synkelma, however, responds that "[s]tumps are part of trees, which may be removed to create an access and viewing corridor," and he faults the Board for assuming that "'excavating' encompasses stump removal."  Although excavating is not defined in the Ordinance, the ordinary definition of "excavate" is "to dig out and remove."  *Excavate*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/excavate  (last   visited   June   21,

---

[8]  *See also* WIS. ADMIN. CODE § NR 115.05(1)(d) ("Filling, grading, lagooning, dredging, ditching and excavating may be permitted only in accordance with the provisions of [WIS. ADMIN. CODE §] NR 115.04, the requirements of [WIS. STAT.] ch. 30 … and other state and federal laws where applicable, and only if done in a manner designed to minimize erosion, sedimentation and impairment of fish and wildlife habitat and natural scenic beauty."); § NR 115.04(3) (outlining permitted uses in shoreland-wetland zoning districts, none of which allow stump removal or excavation for the purpose described in this case).

In his reply brief, Synkelma faults the Board for relying in part on WIS. ADMIN. CODE § NR 115.05(1)(d) because it "is unrelated to trees, vegetation, or access and viewing corridors, which are treated in a separate subsection, … § NR 115.05(1)(c)2.b. titled Vegetation." However, he does not address the provisions of the Ordinance that also prohibit land disturbance activities within thirty-five feet of the OHWM, except to argue that those provisions do not expressly mention stump removal.

2024). That definition would certainly encompass digging out and removing tree stumps from the ground. Thus, the Ordinance's plain language supports the Board's interpretation that select cutting of trees within thirty-five feet of the OHWM is allowed to create an access and viewing corridor, but the Ordinance does not allow Synkelma to disturb the land by digging out and removing tree stumps within that same area. The Board's interpretation is further supported by Janet's testimony at the hearing, where he stated: "[W]e don't allow tree root stump removal closer than 35 [feet] because there's no land disturbance. You can grind the stumps flush with the surface, but the root structure has to stay in." Accordingly, the Board did not err by concluding that Synkelma was free to cut trees to create an access and viewing corridor, but he was not free to excavate the shoreland and remove the tree stumps.

¶25 The Board also correctly determined that Synkelma's retaining walls and patio cannot legally exist within thirty-five feet of the OHWM. Synkelma has not identified any Ordinance or statutory provision allowing a patio and retaining walls to be built within the vegetative buffer zone. Again, the vegetative buffer zone is "[l]and extending from the [OHWM] to 35 feet inland," ORDINANCE § 8.3.C.1., and is "an area of undisturbed or restored vegetation," ORDINANCE § 12.4.C.1.a.; *see also* WIS. STAT. § 59.692(1v) (providing that, as pertinent here, "[a] county shall grant special zoning permission for the construction or placement of a structure on property in a shoreland setback area if" "[t]he part of the structure that is nearest to the water is located at least 35 feet landward from the [OHWM]" and "[t]he total floor area of all of the structures in the shoreland setback area of the property will not exceed 200 square feet"); ORDINANCE 12.3.C.1.a. (stating that "[p]roposed new structures and/or any portion of proposed new structures located in the shoreland setback area shall be

located … 35 feet or greater from the [OHWM]"); WIS. ADMIN. CODE § NR 115.04(3) (addressing the permitted uses in shoreland zoning districts but failing to mention the use at issue in this case). Thus, by definition, the access and viewing corridor within thirty-five feet of the OHWM cannot contain Synkelma's patio and retaining walls, and the Board's conclusion was not based on an error of law.

¶26 Next, Synkelma argues that the Board improperly relied on Article VII of the Ordinance in its decision, which he argues is "legally incorrect" because "Article VII does not apply here" and the "applicable provisions are contained in Articles V and XII." In its decision, the Board quoted § 7.1.B.2.b.x. of the Ordinance, which states: "Retaining walls are not exempt structures and cannot be authorized within 75 feet of the OHWM."[9] Synkelma observes that Article VII governs "Regulation of Boathouses, Fences, Stairways, Access Paths and Roads." He claims that Article V—governing setbacks—applies and that under §§ 5.1.C.1. and 12.2 of the Ordinance, "retaining walls are plainly structures for which the Zoning Administrator or designee 'shall grant' special zoning

---

[9] Synkelma notes that Janet also made this error in his October 16, 2020 letter denying Synkelma's after-the-fact permit application.

permission if the retaining wall is located 35 feet or greater from the OHWM and the other requirements of [§] 12.3 of the … Ordinance are met."[10]

¶27    Synkelma asserts that "[t]his means if [his] retaining walls and patio were at least 35 feet from the OHWM and otherwise complied with the requirements of [WIS. STAT.] § 59.692(1v) and § 12.3 of the … Ordinance, [the Board] would have no choice but to allow them."  He then claims that "the [Board] assumed [that] Synkelma's retaining wall structures were nowhere close to compliance," but "[i]n reality, the retaining walls in question were approximately five to ten feet out of compliance."  "If the Board had proceeded under the correct setback in this case," argues Synkelma, "it may have decided that any violation was de minimis because the structures in question (patio and retaining walls) are only slightly out of compliance and are within the access and viewing corridor, where land may be disturbed."

¶28    We disagree that the Board proceeded on an incorrect theory of law when it referenced § 7.1.B.2.b.x. of the Ordinance.  As the Board argues on appeal, while "a retaining wall could technically be eligible for a special permit as

---

[10] *See* ORDINANCE § 5.1.C.1. (exempting "structures such as porches, gazebos, etc. which meet the requirements of Article XII of this Ordinance" from § 5.1.B.'s requirement of "[a] seventy-five (75) foot setback from the OHWM … for all new structures"); ORDINANCE § 3.2.48 (defining "[s]tructure" as "[a] principal structure or any accessory structure including a garage shed, boathouse, sidewalk, stairway, walkway, *patio*, deck, *retaining wall*, and a porch or a fire pit" (emphasis added)); ORDINANCE § 12.1.A. (providing "special zoning permission for accessory structures in the shoreland setback area pursuant to," as relevant here, WIS. STAT. § 59.692(1v)); ORDINANCE § 12.2.B. ("The Zoning Administrator or designee shall grant special zoning permission for the construction and/or placement of a structure located 35 feet or greater from the OHWM of any navigable waters if the requirements listed in 12.3 below are met."); ORDINANCE § 12.3. (consistent with § 59.692(1v), enumerating several requirements related to special zoning permission); § 59.692(1n)(d)2. (providing that "[a] county shoreland zoning ordinance may not prohibit the construction … within the 75-foot setback requirement" of structures "that satisf[y] the requirements in sub. (1v)").

a Proposed New Accessory Structure" under §§ 5.1.C.1. and 12.3. of the Ordinance, Synkelma "does not address the fact that the first requirement of [§ 12.3.C.1.a.] is that the proposed structure shall be located 35 feet or greater from the OHWM." Here, as noted above, it is undisputed that the patio and at least a portion of the retaining walls are within thirty-five feet of the OHWM. Accordingly, the § 5.1.C.1. exemption Synkelma relies on is not applicable here.

¶29    Further, there is no evidence in the record that the Board's decision hinged on the extent of Synkelma's noncompliance with the Ordinance, such that whether it found the violation "de minimis" or not would have had any bearing on its conclusion. The Board did not err by determining, based on the location of Synkelma's patio and retaining walls, that the project's placement was not authorized under the Ordinance.

## II. The Board's Decision Was Not Arbitrary, Oppressive, or Unreasonable

¶30    Next, Synkelma argues that the Board's denial of his variance request was arbitrary, oppressive, and unreasonable and represented its will and not its judgment. "[A board's] decision is not arbitrary and capricious and represents its judgment if it represents a proper exercise of discretion." *Von Arx v. Schwarz*, 185 Wis. 2d 645, 656, 517 N.W.2d 540 (Ct. App. 1994) "A proper exercise of discretion contemplates a reasoning process based on the facts of record 'and a conclusion based on a logical rationale founded upon proper legal standards.'" *Id.* (citation omitted).

¶31    Synkelma makes two arguments. First, as noted above, the Board determined that Synkelma's hardship was self-imposed due to his removal of the trees and disturbance of the land within thirty-five feet of the OHWM. *See Ziervogel*, 269 Wis. 2d 549, ¶20. Synkelma claims that decision was

arbitrary, oppressive, and unreasonable because he presented ample evidence to the Board "that the slope of his property and related erosion concerns presented an unnecessary hardship or 'practical difficulty' that would render conformity with the strict letter of the setback restrictions unnecessarily burdensome." "Specifically," he claims, "the steep slope of the [p]roperty within the vegetative buffer zone prevents the creation and management of an access and viewing corridor without retaining walls to prevent erosion and maintain slope stability."

¶32     Again, as explained above, Synkelma's basic premise—that he was free to select cut trees *and* remove tree stumps in the vegetative buffer zone to create an access and viewing corridor—is flawed. Synkelma concedes that the Board "may only contend that [Synkelma's] hardship was self-inflicted and insufficient if it denies that Synkelma has the right to disturb land to establish an access and viewing corridor for the purpose of recreation within 35 feet of the OHWM." We previously concluded that the Board properly determined that Synkelma *did not* have the right to disturb the land within thirty-five feet of the OHWM; thus, the Board appropriately determined that Synkelma's disturbance of the land to remove the tree stumps caused the self-inflicted hardship.

¶33     Second, Synkelma argues that it was also arbitrary, oppressive, and unreasonable for the Board to conclude that there were no unique physical limitations inherent in Synkelma's property "on the sole basis that the neighboring properties had steep slopes as well." The Board explained that Synkelma "[m]ust show that compliance with the terms of the ordinance is prevented by unique physical limitations of the property (steep slopes, wetlands etc.) which are not generally shared by other properties." It then determined that Synkelma's "hardship is not due to physical limitations of the property because[, based on] the

site visit, neighboring parcels share the same physical characteristics of this parcel, including the steep wooded slope to the river."

¶34   Synkelma claims that this interpretation "is far too restrictive":  "Just because the [Board] identified three properties in a row with steep slopes does not mean this condition cannot be unique or that it is generally shared by other properties."  Instead, he argues, "[i]t means at most that the neighboring properties also have a unique limitation of steep slopes down to the river for which they may be eligible for a variance."

¶35   Synkelma's argument is contrary to the law.  For example, in *Snyder*, the appellant was denied an after-the-fact variance for a porch that encroached on the allowable side-yard offset requirement.  *Snyder*, 74 Wis. 2d at 470.  On appeal, the appellant argued that he suffered "hardship or practical difficulty because his lot is substandard in size."  *Id.* at 477.  Our supreme court disagreed, concluding that "the offset requirement placed upon appellant's lot is not unique or peculiar to his property, for it applies equally to all lots of similar size"; thus, "[b]ecause the restriction does not especially affect appellant's lot, it may not constitute hardship or difficulties which justify a variance."  *Id.*  The court went on to explain:

> Practical difficulties or unnecessary hardship do not include conditions personal to the owner of the land, but rather to the conditions especially affecting the lot in question.  "[I]t is not the uniqueness of the right of the owner, but uniqueness of the land causing the plight, which is the criterion."

*Id.* at 479 (alteration in original; citation omitted).

¶36   The Board did not err by observing neighboring properties and determining that Synkelma's property did not contain unique physical limitations.

The Board appropriately conducted a site visit to observe the land in that area and concluded, based on that visit, that Synkelma's property was not unique because neighboring properties also shared a shoreland slope.[11]  Further, like the size of the appellant's property in ***Snyder***, all the properties in the area containing a steep slope down to the river are treated the same under the Ordinance.  Synkelma's answering claim that his neighbors would then also share in his alleged hardship under the Ordinance is based on his previously addressed, erroneous understanding of the Ordinance and, thus, is without merit.

¶37     Synkelma also argues that the Board's decision "conflicts with its own explanation of the test" because the "test uses 'steep slopes' as an example of a unique physical limitation which is not generally shared by other properties." Synkelma misreads the Board's explanation.  Based on the Board's language, Synkelma was required to prove that "compliance with the terms of the ordinance is prevented by" (1) the "unique physical limitations of the property" and (2) that those physical limitations "are not generally shared by other properties."  The Board listed "steep slopes" as an example of "unique physical limitations of the property," not as an example of a "unique physical limitation[] of the property … which [is] not generally shared by other properties."  This reading is clear based on the placement of "steep slopes" in the sentence after the phrase "unique physical limitations of the property" rather than at the end of the sentence.  The Board's decision was not arbitrary, oppressive, or unreasonable.

---

[11] If Synkelma meant to argue that his shoreline slope is somehow different from his neighbors, he has both failed to provide evidence in support of that proposition and failed to develop that argument on appeal. *See **State v. Pettit**,* 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

19

### III. The Board's Decision Is Supported by the Evidence

¶38 Finally, Synkelma argues that the Board's "determination that granting the variance would harm the public interest was based on nothing more than rank speculation and conjecture that Synkelma's removal of trees is certain to poison the groundwater, harm the fish habitat, and destroy the natural scenic beauty of the area." According to Synkelma, "there is no evidence in the record by which the [Board] could reasonably arrive at this determination."

¶39 On certiorari, "[w]e must uphold the [Board's] decision so long as it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion." *See Sills v. Walworth Cnty. Land Mgmt. Comm.*, 2002 WI App 111, ¶11, 254 Wis. 2d 538, 648 N.W.2d 878. "Substantial evidence means credible, relevant and probative evidence upon which reasonable persons could rely to reach a decision." *Id.* "The weight to be accorded the facts is for the board to determine rather than the courts." *Delta Biological Res., Inc. v. Board of Zoning Appeals*, 160 Wis. 2d 905, 915, 467 N.W.2d 164 (Ct. App. 1991).

¶40 We disagree with Synkelma's claim that the Board's finding of harm to the public interest was based on "rank speculation and conjecture." In its decision denying Synkelma's variance, the Board explained, "The variance will be contrary to the public interest as expressed by the objectives of the [O]rdinance because: there is great potential for water quality problems and harm to fish habitat." The Board's findings were based on the DNR's letter, read into the record during the hearing, stating that "[t]he construction of structures and land disturbances within the shoreland setback area and the vegetative buffer zone are likely to have an adverse cumulative effect on the waterway and water quality due

to these public interests." The DNR's letter further explained that "Wisconsin's navigable waterways are held in trust for all people to enjoy. The shoreland setback is important to protect the water quality, natural scenic beauty and the fish and wildlife habitat of Wisconsin's waterways." Thus, the Board's conclusion that granting the variance would be contrary to the public interest was based on evidence in the record from the DNR that excavating the tree stumps and constructing retaining walls and a patio within thirty-five feet of the OHWM—an area meant to be a vegetative buffer zone—would have an adverse impact on water quality.

¶41 Synkelma's arguments to the contrary are, again, based entirely on his erroneous position that he had the right to remove the tree stumps from the access and viewing corridor and his claim that once the tree stumps were removed, he needed to install the retaining walls to "prevent[] erosion and redirect[] drainage." Overall, Synkelma fails to identify any credible evidence that reasonably calls the Board's decision into question. He simply disagrees with the Board's exercise of discretion and the weight it accorded the evidence. While Synkelma wishes the Board had given *his* asserted evidence more weight, we will not reverse on that basis.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.